TRUMBLE ET AL. *v.* STANO ET AL.

[Cite as Trumble v. Stano, 8 Ohio Misc. 69.]

(No. 819230—Decided November 24, 1965.)

Common Pleas Court of Cuyahoga County.

*Mr. Joseph J. Berdis* and *Mr. John Petruska*, for plaintiffs.
*Mr. Charles T. Wochna* and *Mr. John F. Sands*, for Jerome Stano.
*Mr. John T. Corrigan*, county prosecutor, and *Mr. John L. Dowling*, for Board of Elections.

THOMAS, J. I think by now there has been sufficient discussion of the statute (Section 3517.13, Revised Code), that we are dealing with here for everyone to know the basis upon which this hearing has to proceed. By now I think that it must be understood that to transmit the present record in this present matter to the prosecutor and the grand jury this court must find that the statement of expenditures filed by Jerome Stano with the Board of Elections is false or made with a wilfull intent to defeat certain sections of the Election Code.

These sections relate principally to the listing of legitimate expenses and to the required filing of written statements of expenditures.

A false statement of expenditure is one which is intentionally stated to be true but which is not true, or a statement which is made with an intent to wilfully violate the law.

In short, then, the evidence before this court must be appraised to determine if it is probable that Jerome Stano filed a statement with the Board of Elections which he intentionally knew to be untrue and made with an intent to wilfully violate the law.

First, what about the advertisement in the St. Charles Elementary School band and orchestra pamphlet?

Giving this ad its reasonable meaning, it undoubtedly served a dual purpose. It sought to promote State Road Beverage and it also sought to promote the candidacy of Jerome Stano, a candidate for council in Ward Two.

Undoubtedly, from the evidence, it appears that he sought to treat this page ad costing $50 as a business expenditure. He sought to have State Road Beverage in effect pick up the check for this ad, but at the same time derive benefit from it as a candidate.

The transcript undoubtedly supported the board in its conclusion that: "The cost of this ad was paid for by the State Road Beverage store funds which in the board's opinion was indistinguishable from Mr. Stano's funds."

The board on its own acted to require Mr. Stano to file an amended statement. He has done so, but I am required to go further here to see whether nevertheless in the original statement he has violated the election laws by failing to originally report this act.

I am forced, of course, to read the evidence, not only in its expressed form but in terms of what inferences I may draw from it. The particular thing that immediately strikes me is that this ad was there for everyone to see. There was no concealment. Stano obviously was mentioning his name all over the place. It is in the upper part of the ad and it is certainly in the lower half of the ad. Because of that I have concluded that this ad shows no concealment. Only if there was concealment of this obvious effort to use his business for his political promotion would I find and could I find, as I see it, that there was any intent to violate the election laws by the statement that he filed.

I think clearly he was trying to use this business for his own purposes in running for office. But I do not think that it follows that he was trying to conceal from the Board of Elections the expenditure of funds for political purposes.

The prosecutor here suggests that Stano is not shown to have had any previous experience in running for office, or for that matter, I think it could be added in reporting his expenditures or in carefully drawing the line between business expenditures or political expenditures.

It is manifest that he is now educated and because of the

nature of the business that he is in it is particularly necessary that in the future he completely divorce this business from any political promotion. Surely any future effort on his part to try to combine a political and business purpose would have to be read in light of the experience which grows out of this proceeding.

Now, then we move on to the advance payment of $200 to Action Advertising.

It is true, as is suggested here, that a practice of loaning money to a campaign committee by a candidate might lead to a contravention and a defeat of the purpose of the election laws. If a loan was not recorded, or if a repayment of money is not recorded, it might certainly in some cases throw doubt on whether or not there is a full public record of all receipts and expenditures.

Each case necessarily must be viewed in light of the circumstances of the case at hand.

Here, when all the evidence came out, it revealed that the total printing bill was $908.08. The evidence also revealed that the full amount of this bill was covered by four checks, examined here in court. One of these checks was a $200 check made out on April 3, 1965, actually before the printing was even accomplished.

It appears further that this check was on the checking account of Jerry Stano. Gayle Rullo testified, however, that from the proceeds of the raffle Stano was reimbursed the full amount of the $200 which the record indicates that he advanced.

Gaylo Rullo was an extremely believable witness. She convinces me that she did pay back this money to Jerry Stano. Since she did I think that in effect it means that the committee paid the full cost of the printing.

Now, she in effect said this was a bookkeeping transaction. There having been full reimbursement, it would nonetheless be true that strict adherence to the detail of election reporting I think would have required him to have listed the money that he advanced and the money that he was reimbursed. But in terms of whether or not this constitutes a concealment we have to look in terms of whether or not the full bill was paid by the committee. On the whole evidence, accepting Gayle Rullo's testimony as I do, I do find that the committee paid this bill,

He did not pay the bill. Accordingly failure to list a printing expenditure on his statement, in my judgment, and I do so find, was not a false statement nor does it reveal any intent to defeat the election laws.

Finally, as to door prizes, it seems to me that the giving of a nominal door prize by a candidate with his political card attached or some other printed notice attached with the purpose of advancing his candidacy constitutes advertising. Advertising is one of the listed legitimate expenses.

The difficulty lies in determining at what point does the door prize cease to be nominal and become something substantial that a voter in effect is being offered as an out-and-out inducement in return for a vote? Obviously it is true, and I think all of us recognize that before you hand out the door prize to the winning person you do not say, "Now, you only get this if you agree to vote for Joe Blow," whoever the candidate may be. In that sense there is no direct inducement. Yet it necessarily would be true that if the gifts become so substantial, so expensive and so out of proportion to the usual concept of a door prize, it would seem to me under such circumstances the door prize might easily overstep the limits and become an illegal inducement.

A pad of matches is one thing, but if a candidate handed out gift certificates as door prizes it would easily be tantamount to an illegal inducement.

Necessarily, the only way to police this matter is if the Board of Elections insists that candidates and committees report money spent for door prizes.

It appears from the testimony this afternoon that the Board of Elections has laid down no policy in this matter and has not really been able to come to grips, it appears, with what to do about door prizes.

Mr. Miller was obviously quite frank but finally indicated nothing had really been done on this matter.

It seems to me it is high time that the board face up to this matter.

I think, for one thing, door prizes by this time have gotten to the point where there needs to be some kind of a set of rules laid down by the board to control them. Yet in view of an obvious lack of policy on this matter, and in the absence

of any evidence here that this candidate gave away such a substantial number of door prizes or that any particular prize, with perhaps this one exception, was of a substantial nature—I think one prize that was described sounded to me as if it was out of line as a door prize—and in the absence of a large number of similar instances I cannot find an intent to defeat and violate the election laws.

Accordingly it seems to me that from all the evidence the original statement of Jerome Stano was neither false nor made with an intent to violate the election laws, though clearly it was inaccurate and it omitted an important duty which the board itself policed by requiring an amended statement.

There has been mention made here of sour grapes. I do not think anyone should regard this proceeding in that light at all. It seems to me that the petitioners were warranted in filing this proceeding.

There was sufficient basis for requiring Jerome Stano to stand up here in court with his witnesses and to publicly account for the things that he did during this campaign.

This has been done. Now that it is completed it seems to me that we can properly say there has been a full airing and full hearing.

Everyone knows that Parma takes its politics seriously. It certainly was good to submit this matter to a public searchlight. I think that clearly the voters of the Second Ward of Parma have been rendered a service by these petitioners and surely the citizens of Parma benefit likewise.

It is no less true, however, that on the whole record I find that this petition should be and will be dismissed at petitioners' costs.

*Petition dismissed.*