IN RE ESTATE OF LOYD WEST, DECEASED.
THEO LEWIS WEST, PERSONAL REPRESENTATIVE OF THE ESTATE OF LOYD WEST, DECEASED, APPELLANT, V. DONNA KARNES, TAX COMMISSIONER FOR THE STATE OF NEBRASKA, APPELLEE.
415 N.W.2d 769

Filed November 13, 1987.    No. 85-822.

814

Paul E. Galter and, on brief, Frank Roubicek, for appellant.

Robert M. Spire, Attorney General, and L. Jay Bartel, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

On petition by the Tax Commissioner of the State of Nebraska, and pursuant to Neb. Rev. Stat. § 25-2001(4) (Reissue 1985), the county court for Knox County set aside its inheritance tax order entered in the probate proceedings for the estate of Loyd West, deceased. Theo Lewis West, as personal representative of the estate, appealed to the district court, which affirmed the county court's judgment setting aside the inheritance tax order. We affirm the district court's judgment.

## DETERMINATION OF DEATH TAXES

On September 7, 1980, Loyd West, a resident of Knox County, died testate and had devised his estate to his surviving

widow, Theo Lewis West, and his four children. After issuance of "Letters of Personal Representative" to Theo, on May 8, 1981, in the county court, Theo filed an inventory which reflected that Loyd's gross estate, located entirely within Nebraska, had a value of $2,319,355 at the date of Loyd's death. Frank Roubicek was the attorney representing Theo as personal representative, while John Thomas was the county attorney for Knox County.

*Applicable Death Tax Statutes.* The rate of inheritance tax for a transfer to an immediate relative, such as a widow or child, is 1 percent of the clear market value of property in excess of $10,000 taken by such recipient; provided, the succession interest of the surviving spouse is exempt from inheritance tax. See Neb. Rev. Stat. § 77-2004 (Reissue 1986). Deductions for determination of the inheritance tax are itemized in Neb. Rev. Stat. § 77-2018.04 (Reissue 1986).

An additional death tax, namely, the Nebraska or state estate tax, is imposed under Neb. Rev. Stat. § 77-2101.01 (Reissue 1986), which states in appropriate part:

> [I]n addition to the inheritance taxes imposed by the laws of the State of Nebraska, there is levied and imposed an estate or excise tax upon the transfer of the estate of every resident decedent and upon the value of any interest in Nebraska real estate of a nonresident decedent. The amount of such tax shall be the amount by which the maximum credit allowance upon the tax imposed by the Federal Revenue Act imposing such tax shall exceed the aggregate amount of all estate, inheritance, legacy, or succession taxes paid to any state or territory or the District of Columbia, or any possession of the United States, in respect of any property subject to such tax.

To compute the amount due the United States for the federal estate tax, I.R.C. § 2011 (1982), as a part of the "Federal Revenue Act" mentioned in § 77-2101.01, allows credit for state death taxes paid up to a maximum credit specified in the federal statute. Therefore, the Nebraska estate tax is computed by reference to, or designed to "pick up," the difference between the maximum credit allowance under the Federal Revenue Act and the amount actually paid as the Nebraska

inheritance tax.

Among other Nebraska statutes pertinent to inheritance tax are Neb. Rev. Stat. § 77-2018.03 (Reissue 1986), which provides in part:

[N]otice served upon the county attorney shall constitute notice to the county and the State of Nebraska. It shall be the duty of the county attorney to represent the county and the State of Nebraska in such matters as its attorney. In so representing the county and the State of Nebraska, the county attorney is authorized, in addition to such other powers as he normally may exercise as attorney for the county, to enter into and bind the county and the State of Nebraska by stipulation as to any facts which could be presented by evidence to either the inheritance tax appraiser or the county court, and to waive service of notices upon him to show cause or of the time and place of hearing, and to enter a voluntary appearance in such proceeding, in behalf of the county and the State of Nebraska,

and Neb. Rev. Stat. § 77-2022 (Reissue 1986): "When the value of the property has been fixed, as provided in [statutes requiring that property subject to inheritance tax be appraised at fair market value], the county judge shall determine and assess the tax to which the same is liable."

*Inheritance Tax Worksheet.* On behalf of the personal representative, Roubicek prepared an "inheritance tax worksheet," which was tendered to county attorney Thomas. That worksheet recited that Loyd West's gross estate had a value of $2,319,355 (the same value reflected in the personal representative's inventory filed with the court), the widow's succession interest was valued at $1,069,744, and the net value of the West estate, subject to Nebraska inheritance tax, was $1,249,611 (gross estate less widow's succession interest; no itemized deductions were claimed on the worksheet). In the worksheet's section entitled "NEBRASKA INHERITANCE TAX COMPUTATION," there was only the notation "As per material filed," which was inserted before the last line of the computation section—"Nebraska inheritance tax balance due . . . $48,375.00." Roubicek signed the worksheet on

May 7, 1981, the same day that Thomas, as Knox County attorney and pursuant to Neb. Rev. Stat. § 77-2018.01 (Reissue 1986), signed the worksheet and its incorporated certificate: "I have examined the foregoing worksheet and have no objections thereto for inheritance tax purposes only."

The inheritance tax worksheet was filed in the county court on May 8. Neither Roubicek nor Thomas filed any material to substantiate, or show the method of computing, the $48,375 figure stated in the worksheet as the inheritance tax due from devisees in the West estate. On June 2, the Knox County treasurer issued a receipt for payment of $48,375 as "Inheritance tax Loyd West Estate," and, also on June 2, an associate county judge of Knox County signed a "CERTIFICATE EVIDENCING PAYMENT OF COUNTY INHERITANCE TAX" of $48,375 regarding "the inheritance tax levied by this Court against the estate of Loyd West on the 2 day of June 1981." (The record does not contain the June 2 order indicated in the associate county judge's certificate.)

Form 706N, a Nebraska estate tax return, was signed by Roubicek on June 3 and, in reference to the West estate, recited that there was a taxable estate of $1,249,611, a credit of $48,375 was taken for state death taxes (which had been claimed on the federal estate tax return for the West estate), and inheritance tax was paid in the amount of $48,375, the same amount taken as a credit against the federal estate tax. Certification from Knox County, attached to the West estate's form 706N, verified payment of the inheritance tax stated in the state estate tax return. The 706N for the West estate then stated that the estate tax due the State of Nebraska was "$0." (For the West estate, there would be no state estate tax if the correct amount of inheritance tax paid was the same as the credit allowed against the federal estate tax. See § 77-2101.01.) Based on the information contained in the state estate tax return (706N), the Nebraska Department of Revenue, on June 10, issued its "Certificate Evidencing Payment of Nebraska Estate Tax," which stated: "Amount of Nebraska Estate Tax Paid      NO TAX DUE."

As a result of a hearing held on June 16, County Judge James J. Duggan entered a "FORMAL ORDER FOR COMPLETE

SETTLEMENT AFTER INFORMAL TESTATE PRO-CEEDING," which recited the court's finding: "Inheritance tax has been determined, paid, and proper receipts filed. Inheritance tax is hereby approved as completed in this case." The certificate from the Nebraska Department of Revenue ("NO TAX DUE") was filed in the county court on June 19.

According to the "Estate Tax Closing letter," issued by the district director of the Internal Revenue Service on October 28, 1981, the tentative federal estate tax for the West estate was $448,140, but, after credits, including the $48,375 credit for state death taxes, the net federal estate tax on the West estate was $357,265.

## PROCEEDINGS TO SET ASIDE TAX ORDER

*Pleadings and Motion.* Section 25-2001(4) empowers a district court and county court, see Neb. Rev. Stat. § 24-528 (Reissue 1985), to vacate its judgment or order after the term at which such judgment or order was made, if there has been "fraud practiced by the successful party in obtaining the judgment or order." On November 4, 1983, the Nebraska Tax Commissioner filed a petition to vacate the Knox County Court's inheritance tax order entered on June 16, 1981. The Tax Commissioner alleged that, if properly computed, the inheritance tax payable to Knox County "should not have been in excess of about $8,000.00," whereas the inheritance tax collected by Knox County was $48,375 as the result of the worksheet signed by Roubicek and Thomas. The Tax Commissioner claimed that the "Inheritance Tax Worksheet was fraudulently prepared and executed with the express purpose and intention of grossly overstating the inheritance tax due Knox County, in order to eliminate the estate tax due the State of Nebraska . . . ." The Tax Commissioner also alleged:

> That said fraud and collusion first became known to the State of Nebraska and its officers and employees in September, 1983, after another similar attempt to eliminate the state estate tax was brought to the attention of the Attorney General in August, 1983; the Department of Revenue of the State of Nebraska then initiated an investigation of estates in Knox County, Nebraska, to discover whether similar practices had occurred in the

past; that that investigation led to the discovery of the fraud and collusion in this estate; that the Tax Commissioner could not, in the exercise of reasonable diligence, have discovered said fraud and collusion before she did.

Bearing in mind that the property valuations for the West estate are not disputed for the purposes of the present appeal but are accepted as reflected on the inheritance tax worksheet in question, the value of the West gross estate is $2,319,355. From that gross estate, there are deducted $357,265 (federal estate tax paid), $1,069,744 (widow's succession interest; exempt), and $40,000 ($10,000 exemption for each of the four West children), or $1,467,009 as the total for the deduction and exemptions, which results in $852,346 as the net value of the West estate subject to the Nebraska inheritance tax at the rate of 1 percent, or an inheritance tax of $8,523. When the inheritance tax is subtracted from $48,375 (the credit allowed to determine the federal estate tax on the West estate), the remainder, $39,852, is the apparent state estate tax due the State of Nebraska, based on the figures reported on the inheritance tax worksheet.

In their amended answer, the devisees of Loyd West generally denied the Tax Commissioner's allegations and, as an affirmative defense, raised the statute of limitations prescribed by Neb. Rev. Stat. § 25-2008 (Reissue 1985), which, except in cases of persons under certain disabilities, provides in part: "Proceedings to vacate or modify a judgment or order, for the causes mentioned in section 25-2001, subdivisions (4), (5) and (7), must be commenced within two years after the judgment was rendered or order made . . . ." After their answer, the West devisees filed a motion for summary judgment, asserting that the Nebraska estate tax, imposed under Neb. Rev. Stat. §§ 77-2101.01 et seq. (Reissue 1986), is unconstitutional. (The devisees' particular assertions of unconstitutionality are set forth and addressed later in this opinion.) The devisees also sought summary judgment, claiming that the 2-year statute of limitations found in § 25-2008 had run. The court overruled the motion for summary judgment.

*Hearing on Motion to Vacate.* County Judge James J. Duggan testified that he "look[ed] at" and "relied on the

inheritance tax worksheet" before he entered his order on June 16, 1981, approving the inheritance tax due on account of Loyd West's death. According to Judge Duggan, if the county attorney approves an inheritance tax worksheet, "I accept it [the worksheet]." If the county attorney does not approve the worksheet, a hearing would be held regarding the inheritance tax determination, although, after becoming a judge in 1977, Judge Duggan has never had to preside over a contested inheritance tax hearing.

Witnesses for the Nebraska Department of Revenue testified about the procedure followed when a Nebraska estate tax return, form 706N, is filed. Unless there is an extrinsic indication of some possible irregularity affecting an estate tax return, the department does not audit a 706N. Basically, then, the department's procedure consists of reference to federal estate tax tables to verify the amount of credit allowable as a result of the taxable estate reported on the federal estate tax return. After confirmation that the amount of the allowed federal estate tax credit claimed by an estate coincides with the amount of the credit shown on the 706N, the department then compares the inheritance tax paid, as reported in the 706N, with the certificate for inheritance tax payment, which has been issued by the collecting county and accompanies the 706N filed with the department. If the amount of the paid inheritance tax equals or exceeds the allowed credit used by the estate to determine its federal estate tax, the department issues its certificate that no Nebraska estate tax is due. However, if the amount of the credit claimed for the federal estate tax exceeds the Nebraska inheritance tax paid, the department issues its certificate reflecting payment of the Nebraska estate tax, if the correct payment of the state estate tax has accompanied the 706N, or issues a notice of the amount due on the Nebraska estate tax, if no payment or an insufficient payment has accompanied the 706N. The department is not supplied with information substantiating any computations for figures appearing on the 706N. The fact that the amount of the inheritance tax paid is equal to the federal credit for death taxes does not, by itself, indicate any irregularity concerning the 706N. Therefore, the department's standard procedure in

reviewing Nebraska estate tax returns does not include an audit or require an investigation or request for additional information concerning an estate. Such departmental procedure, as previously described, existed and was followed regarding the 706N filed by the West estate. Because no error or irregularity appeared on the face of the return filed for the West estate, the Department of Revenue issued its certificate that there was no Nebraska estate tax due from the West estate. Before August 1983, the department had no information about any irregularity involving the return filed for the West estate. However, in August 1983, as the result of information from external sources, the department commenced an investigation into several Nebraska estate tax returns for estates administered in Knox County, including the West estate.

At the hearing on the commissioner's petition, other evidence disclosed several instances where Roubicek had prepared inheritance tax worksheets containing an overstated inheritance tax and then sought approval of those worksheets through stipulations with county attorneys. A former county attorney of Antelope County, which is adjacent to Knox County, testified that he had disapproved a worksheet prepared by Roubicek because the inheritance tax was overstated in the worksheet. When the Antelope County attorney told Roubicek the reason for disapproval of the tendered worksheet, Roubicek responded that he "wondered what the Antelope County supervisors would think if they found out [the Antelope County attorney] was turning down $8,000 to the county," that is, rejection of the overstated inheritance tax. Regarding another estate which involved assets located in several counties, Roubicek wrote to the various county attorneys and stated:

Now, the Federal death tax credit is $6,887.00. In otherwords [sic], a little more than the worksheet figures out and rather than send this extra money to the State of Nebraska on an estate tax, I propose that the extra credit be divided among the counties proportionately; which I have done. So, each of you fellows is getting a bit more. Tell me if you find this agreeable.

I am enclosing a stipulation and waiver which, if satisfactory, please sign and return to me.

John Thomas, Knox County attorney when the West inheritance tax was determined, testified about his general procedure followed for stipulation to an inheritance tax worksheet, which included his consideration of property valuations, deductions, and the computation of the inheritance tax reflected in the tendered worksheet. After applying various "rules of thumb" to the inheritance tax worksheet for the West estate, Thomas accepted the worksheet prepared by Roubicek and "stipulated" that the inheritance tax was $48,375, inasmuch as Thomas had satisfied himself that Knox County "was entitled to something in the neighborhood of 48,000 maybe a little more, maybe a little less." Although he did not recant the figure reflected on the questioned worksheet for the amount of inheritance tax due Knox County, Thomas conceded that the stipulated values in the worksheet would not support the inheritance tax liability stated in that worksheet. Regarding another estate for which Roubicek was the personal representative's attorney, Thomas admitted that there was a stipulation between Roubicek and Thomas whereby the inheritance tax was intentionally overstated and, therefore, deliberately overpaid to Knox County to avoid payment of an estate tax to the State of Nebraska.

In his testimony, Roubicek offered lengthy explanations about some methods for valuation different from the methodology utilized for the West estate, that is, methods which might have produced property valuations greater than those entered on the worksheet approved by Thomas. According to Roubicek, those other methods of possible valuation might have increased the value of the West estate to somewhere near $10 million and, correspondingly, would have increased the West inheritance tax to $48,375, as asserted in the inheritance tax worksheet filed in the county court. Notwithstanding the other methods of possible valuation which might have resulted in the inheritance tax of $48,375, Roubicek admitted that, as stated in the worksheet, Thomas and he had stipulated to specific estate valuations for inheritance tax purposes as well as to the overstated amount of $48,375 as the inheritance tax due Knox County. As an explanation for the overstatement of inheritance tax due Knox County, Roubicek

testified: "I am faced with an inheritance tax proceeding in which my clients properly are required to disclose all their financial transactions perhaps for two or three years, which they are extremely desirous of avoiding . . . ."

*County Court's Decision.* The county court found that the inheritance tax order was procured through collusion of counsel and intentional fraud. Also, the court found that the 2-year statute of limitations (§ 25-2008) did not bar the Tax Commissioner's action, because the Tax Commissioner, in the exercise of reasonable diligence, could not have discovered the fraud within the 2 years after the fraudulently obtained inheritance tax order. As a result of those findings, the county court set aside the inheritance tax order entered on June 16, 1981, and ordered a redetermination of the inheritance tax liability concerning the death of Loyd West. On appeal by the personal representative, the district court affirmed the county court's judgment which set aside the inheritance tax order.

In the appeal to this court, the personal representative contends (1) Nebraska's estate tax law is unconstitutional; (2) the 2-year statute of limitations in § 25-2008 prevented the county court from setting aside the inheritance tax order; and (3) fraud, required to set aside a judgment pursuant to § 25-2001, has not been established.

CONSTITUTIONALITY OF NEBRASKA ESTATE TAX

*Delegation of Legislative Power.* Being and remaining liable until the state estate tax is paid, see § 77-2102, and in her initial attack on the constitutionality of the Nebraska estate tax, the personal representative of the West estate contends that the Nebraska Legislature, in adopting a state estate tax determinable in reference to the amount of federal estate tax liability, has delegated to the United States the power to raise state revenue by taxation. See, Neb. Const. art. VIII, § 1 ("The necessary revenue of the state and its governmental subdivisions shall be raised by taxation in such manner as the Legislature may direct"); Neb. Const. art. III, § 1 ("[T]he legislative authority of the state shall be vested in a Legislature . . .").

With the possible exceptions of Nevada and South Dakota, the several states of the United States have adopted a system of

death tax statutes which, in substance and at a minimum, impose a state estate tax equal to the credit allowed for state death taxes in fixing the federal estate tax. See *Estate of Fasken*, 19 Cal. 3d 412, 563 P.2d 832, 138 Cal. Rptr. 276 (1977). The state estate tax has been characterized as a "pickup tax," or, as described in *Estate of Fasken, supra*,

> Each state according to the [*Treichler v. Wisconsin*, 338 U.S. 251, 70 S. Ct. 1, 94 L. Ed. 37 (1949)] formula may properly levy a pick-up tax which is calculated by first apportioning the federal state death tax credit according to the ratio of property which lies within its borders, and then reducing that apportioned credit by its inheritance tax. The balance of the apportioned credit constitutes the pick-up tax.

19 Cal. 3d at 428, 563 P.2d at 841-42, 138 Cal. Rptr. at 285-86.

In *Anderson v. Tiemann*, 182 Neb. 393, 155 N.W.2d 322 (1967), this court considered the constitutionality of certain income tax statutes of Nebraska enacted pursuant to an amendatory constitutional provision, namely, Neb. Const. art. VIII, § 1B: "When an income tax is adopted by the Legislature, the Legislature may adopt an income tax law based upon the laws of the United States." In *Anderson*, taxpayers, challenging the constitutionality of the income tax law as an unlawful delegation of legislative power contrary to the Nebraska Constitution, pointed to the specific language in the income tax law:

> "Any term used in [the state income tax law] shall have the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required. Any reference to the laws of the United States shall mean the provisions of the Internal Revenue Code of 1954, and amendments thereto, other provisions of the laws of the United States relating to federal income taxes, and the rules and regulations issued under such laws, *as the same may be or become effective, at any time or from time to time, for the taxable year.*"

(Emphasis in original.) 182 Neb. at 395, 155 N.W.2d at 325.

This court, in *Anderson v. Tiemann, supra*, held that

Nebraska statutes imposing income taxation by reference to future income tax laws of the United States were constitutional and not an unlawful delegation of legislative power to the United States, and stated:

It is conceded that the Nebraska Legislature may lawfully adopt by reference an existing law or regulation of another jurisdiction including the United States. Lincoln Dairy Co. v. Finigan, 170 Neb. 777, 104 N.W.2d 227.

182 Neb. at 396, 155 N.W.2d at 325.

The constitutional amendment with which we are dealing does not require, but only authorizes, the Legislature to base a state income tax law upon the laws of the United States. In connection with a state income tax law, we think it permits the Legislature to use all, part, or none of the laws of the United States as it may determine from time to time appropriate insofar as it may be lawful and practicable to do so. It does not preclude the Nebraska Legislature from repealing its own present enactment or adopting a completely different method of imposition of its income tax, and the Legislature retains the complete legislative power to make all such decisions. The adoption of a state income tax based upon present and future federal income tax laws does not constitute a waiver of the sovereignty of the state, nor an abdication of its functions, nor constitute a violation of the requirements of a representative form of government.

182 Neb. at 399-400, 155 N.W.2d at 327.

Although *Anderson v. Tiemann, supra*, dealt with Nebraska statutes imposing an income tax and the present appeal deals with imposition of a state estate or excise tax, we believe that much of the rationale in *Anderson* applies to the delegation argument made by the personal representative of the West estate. Whether the Nebraska estate or excise tax, § 77-2101.01, is imposed on the transfer of every Nebraska resident's estate is a matter of legislative prerogative exercisable only by the Nebraska Legislature and not exercisable by any other legislature, such as the U.S. Congress. Although the Nebraska estate tax is correlative in operation with the federal estate tax

law, inasmuch as the amount of the Nebraska estate tax is computed, and eventually determined, by reference to the state death tax credit used in fixing federal estate tax liability, the Nebraska estate tax is, nevertheless, authorized and imposed in a statute enacted by the Nebraska Legislature and does not exist independent of such legislative act of the Nebraska Legislature. As stated in *Anderson v. Tiemann*, 182 Neb. 393, 396, 155 N.W.2d 322, 325 (1967): "[T]he Nebraska Legislature may lawfully adopt by reference an existing law or regulation of another jurisdiction including the United States." Similar to the rationale employed in *Anderson v. Tiemann, supra*, we conclude that § 77-2101.01 specifies a tax which, although referable to federal law for computation of the amount payable to the State of Nebraska, remains subject to the power of the Nebraska Legislature, which determines whether such tax exists or will continue to exist.

Courts of other jurisdictions have reached a conclusion similar to ours, when those courts were called upon to consider a delegation argument against a state tax statute which, in defining terms or computing the amount of state tax, refers to federal statutes or regulations. For example, in *City Natl. Bk. v. Iowa State Tax Comm.*, 251 Iowa 603, 102 N.W.2d 381 (1960), the Iowa Supreme Court held that the phrase "taxable income," used in the Iowa income tax statute, which referred to the Internal Revenue Code of 1954 for the definition of "taxable income," was not an unconstitutional delegation of state power to tax, and expressed:

> [I]t is quite apparent that the only purpose in the reference to the federal statutes is for a definition of "adjusted gross income" and to broaden the definition of "gross income" in our prior law to include such income as that on capital gains under the federal definition. No attempt is made to make the construction or interpretation of such definitions by federal authorities the law in Iowa, and they are not given power to determine or fix the Iowa tax. In other words, the reference is not for the purpose of "fixing such tax" . . . .

251 Iowa at 617, 102 N.W.2d at 389. See, also, *First Federal Savings & Loan Assn. v. Connelly*, 142 Conn. 483, 493, 115

A.2d 455, 459 (1955) (defining "net earning" by reference to federal income tax law was not an unconstitutional delegation of power to tax; "This is not a delegation of legislative power but an incorporation by reference of the federal law into the state law"); *Parker Affiliated Cos., Inc. v. Department of Revenue*, 382 Mass. 256, 266, 415 N.E.2d 825, 831 (1981) (incorporation of federal tax law into state statute on income taxation was not an unconstitutional delegation of power to tax; " '[Federal] action may influence the amount of the tax payable, but the taxing power has not been delegated to [the Federal government]' ").

Therefore, we hold that, while § 77-2101.01 sets out the method for computing the amount due as the Nebraska estate tax and refers to the federal estate tax law in specifying the computation, existence of the Nebraska estate tax results only from, and depends entirely on, the power of the Nebraska Legislature to enact legislation imposing a tax on the estate of every Nebraska resident—a legislative power exercisable irrespective of, and independent from, federal estate tax law, but exercised with correlated reference to federal law as a practical matter of convenience to the estate and economy for the state. The Nebraska Legislature, not the United States, has statutorily dictated that the credit for state death taxes in the federal estate tax scheme is the basis for computing the Nebraska estate tax. Therefore, § 77-2101.01 is not an unconstitutional delegation of legislative power.

*Separation of Powers.* Next, in questioning the constitutionality of the Nebraska estate tax, the personal representative of West's estate proposes that, inherent in the procedure for determination of Nebraska death taxes, there is a conflict of interest statutorily demanded of a county attorney, namely, the county attorney must represent both the county and the State of Nebraska concerning matters immediately affecting the inheritance tax and ultimately bearing upon the Nebraska estate tax. See § 77-2018.03 ("In all matters involving the determination of inheritance tax . . . [i]t shall be the duty of the county attorney to represent the county and the State of Nebraska in such matters as its attorney"). See, also, *State ex rel. Nebraska State Bar Assn. v. Richards*, 165 Neb. 80, 84

N.W.2d 136 (1957) (county attorney has the duty to represent the county and the state in inheritance tax matters). Such double duty required of the county attorney, the personal representative argues, constitutes legislative direction of a lawyer's conduct and, therefore, intrudes into the province of the Supreme Court of Nebraska, which is responsible for supervision of a lawyer's professional conduct.

The personal representative does not suggest in what manner death taxes were increased, or would be increased, or how any taxpayer's liability for death taxes was, or would be, enhanced or otherwise adversely affected by the dual duty of the county attorney in representation of both the state and county regarding matters pertinent to death taxes payable under Nebraska law.

For standing to contest constitutionality of a statute, the contestant must be one who is, or is about to be, adversely affected by the statute in question and must show that, as a consequence of the statute's alleged unconstitutionality, the contestant is deprived of a constitutionally protected right. See *State v. Irwin*, 208 Neb. 123, 302 N.W.2d 386 (1981). See, also, *State v. Michalski*, 221 Neb. 380, 393, 377 N.W.2d 510, 519 (1985) ("To be in a position to challenge the constitutionality of a statute, a party must be adversely affected by the provisions at issue").

Whatever may be the onus imposed on a county attorney as a result of the statutory duty to represent both the state and county in matters affecting death tax liability, the personal representative of West's estate has failed to demonstrate that the county attorney's dual duty has caused, or will cause, any legally recognizable prejudice or injury pertaining to the estate's potential liability for the Nebraska estate tax. Without an adverse effect regarding the West estate's potential liability for the Nebraska estate tax, the personal representative of the West estate does not qualify as one with standing to contest the constitutionality of § 77-2101.01.

*Apportionment Contention.* In her brief, the personal representative states:

> The third area of unconstitutionality does not apply on the particular facts of this case, which is to say in this

particiular [sic] case, there was not apportionment between the states. . . .

To show how the Nebraska state proration and apportionment between the states rule would, or could be, assume these facts for our hypothetical situation . . . .

Brief for Appellant at 20. The personal representative then sets out a hypothetical case involving an estate containing real estate in Nebraska and Colorado and a problematic conflict between the states concerning their respective state estate taxes and the federal credit allowable for state death taxes. However, the West estate does not contain any property located outside the State of Nebraska and taxable under the death tax statute(s) of another state. In the West estate, all the federal estate tax, as well as the credit for state death taxes, is based on property entirely situated in and taxable by Nebraska. The personal representative of West's estate admits that the basis for alleged unconstitutionality is purely hypothetical.

Courts will not decide a question concerning the constitutionality of a statute unless such question has been raised by a litigant whose interests are adversely affected by the questioned statute. A court has no power to summarily pass upon the constitutionality of a legislative act, but has power only to decide justiciable disputes. A court's power to declare a statute unconstitutional may be invoked only when the challenged statute affects a litigant's right under the Constitution. See *State ex rel. Nebraska Nurses Assn. v. State Board of Nursing*, 205 Neb. 792, 290 N.W.2d 453 (1980). See, also, *Ritums v. Howell*, 190 Neb. 503, 209 N.W.2d 160 (1973). " 'The province of a court is to decide real controversies and to determine rights actually controverted, and "The judicial power does not extend to the determination of abstract questions." ' " *Mullendore v. School Dist. No. 1*, 223 Neb. 28, 36, 388 N.W.2d 93, 99 (1986) (citing and quoting from *Fremont Cake & Meal Co. v. Wilson & Co.*, 183 F.2d 57 (8th Cir. 1950)).

Any problem arising out of interstate apportionment of the federal credit for state death taxes, if that were the consequence of § 77-2101.01, is not a justiciable controversy in the present proceedings, but is purely a conjectural question and, as such, need not be answered.

## STATUTE OF LIMITATIONS

The personal representative claims that the 2-year limitation of actions, prescribed by § 25-2008, prevents setting aside the county court order on inheritance tax—a remedy or relief authorized by § 25-2001(4) on account of fraud in obtaining a judgment or order, because the petition to vacate was filed in November 1983, more than 2 years after the inheritance tax order was entered in June 1981. The Tax Commissioner counters that the 2-year limitation of § 25-2008 does not apply when the fraud which produces the judgment or order to be set aside is not discovered within the 2 years immediately after the judgment or order sought to be vacated.

Construing § 25-2008 (statute of limitations) in conjunction with § 25-2001(4) (fraud as a basis for setting aside a judgment), this court, in *Katz v. Swanson*, 147 Neb. 791, 24 N.W.2d 923 (1946), adopted the equitable doctrine of fraud-discovery as an exception to the strict application of the 2-year limitation prescribed by § 25-2008, when the fraud has not been discovered, or in the exercise of reasonable diligence could not have been discovered, during the 2 years immediately following the fraudulently obtained judgment. In *Katz*, this court stated:

"The only exception to the statutory limitation of two years is where the fraud was not discovered within that period. This court has set out the rule in the following apt language: 'Equity will afford relief against a judgement procured by fraud of the successful party, when it appears that the injured party did not, in the exercise of reasonable diligence, discover, within the time allowed for commencing a statutory proceeding to vacate such judgment, sufficient evidence of the fraud to warrant a reasonable belief and expectation that such a proceeding would be successful, if begun.' [Citation omitted.] . . . 'Where such a petition fails to set forth that the facts were not discovered within two years of the trial, and fails to show any reason for extending the two years allowed by statute for setting aside judgments for fraud, equity is powerless to relieve.' [Citation omitted.]"

147 Neb. at 796, 24 N.W.2d at 926-27.

The Tax Commissioner's petition to vacate contained the

allegation that the fraud which produced the inheritance tax order was not discovered, and was not discoverable, in the exercise of the Tax Commissioner's due diligence within the 2 years after such order on inheritance tax. In substance, a 706N is virtually self-validating without extrinsic corroboration, except for the county certificate evidencing payment of the inheritance tax. Evidence demonstrates that, in its review of Nebraska estate tax returns, including the estate tax return for the West estate, the Nebraska Department of Revenue is not supplied with any particular data or computations underlying the figures entered on the estate tax return. In the 706N for the West estate, the reported amount of paid inheritance tax was corroborated by a certificate issued from Knox County as the collecting county. There was nothing inherent in the other limited information or unexplained figures appearing on the face of the West estate's 706N which would indicate irregularity or illegality infecting the process used in arriving at the monetary figures reported in the estate tax return. Until word reached the Department of Revenue concerning possible irregularity in the returns filed by several estates administered in Knox County, there was no indication to the department or departmental suspicion that there might be something awry in the 706N filed by the West estate. The evidence supports the county court's conclusion that the Nebraska Tax Commissioner (Department of Revenue) did not discover, and in the exercise of reasonable diligence could not have discovered, the overstated and misrepresented amount of the inheritance tax due Knox County, as reflected on the inheritance tax worksheet, which, by stipulation of counsel, was submitted to the county court for inheritance tax purposes. There is no error in the county court's applying the equitable doctrine of fraud-discovery to exonerate the 2-year limitation prescribed by § 25-2008 and thereby proceeding to decide whether relief should be granted as authorized in § 25-2001(4).

## VACATING A JUDGMENT OR ORDER

*Nature of Remedy.* As we have already determined in this appeal, the county court properly allowed the Tax Commissioner to proceed under the fraud-discovery exception to the 2-year limitation prescribed by § 25-2008, because the

Tax Commissioner could not have discovered the alleged fraud within the statutorily dictated limitation of time. However, as authorized under § 25-2001(4), a proceeding to vacate a judgment is not an equitable cause of action based on fraud, but is a remedy at law or legal remedy conferred by statute. Whether the relief is sought by a motion addressed to a court's equity jurisdiction or a petition based on a statute which supplies a legal remedy, vacating a judgment or order is equitable in character, available or administered on equitable principles, and extended on equitable terms. See 46 Am. Jur. 2d *Judgments* § 684 (1969). See, also, *Miles v. Layton*, 38 Del. 411, 193 A. 567 (1937); *Keane v. Allen*, 69 Idaho 53, 202 P.2d 411 (1949); *Rossten v. Wolf*, 14 Ill. App. 2d 322, 144 N.E.2d 757 (1957). This court has repeatedly recognized that a court's jurisdiction based on § 25-2001 is concurrent with a court's independent equity jurisdiction. See, *Emry v. American Honda Motor Co.*, 214 Neb. 435, 334 N.W.2d 786 (1983); *Johnson v. Richards*, 155 Neb. 552, 52 N.W.2d 737 (1952); *Shinn v. Shinn*, 148 Neb. 832, 29 N.W.2d 629 (1947); *In re Estate of Jensen*, 135 Neb. 602, 283 N.W. 196 (1939); *Pavlik v. Burns*, 134 Neb. 175, 278 N.W. 149 (1938). Also, we are reminded that, in *Katz v. Swanson*, 147 Neb. 791, 24 N.W.2d 923 (1946), a case previously mentioned in this opinion concerning the statute of limitations, this court adopted a discovery rule for cases involving a fraudulently obtained judgment, notwithstanding the time limitation prescribed by § 25-2008, thereby recognizing applicability of an equitable doctrine in relation to a statutory action for vacation of a judgment. Thus, equitable consideration in the setting of statutorily authorized relief is not a novelty in Nebraska jurisprudence. If, as expressed by Selden, the standard for measure of equitable conscience is the "Chancellor's foot," fraud is indeed a bunion.

*Burden of Proof.* Under § 25-2001(4), to vacate a judgment or order after the term in which the judgment or order was made, the party seeking to vacate such judgment or order allegedly obtained through fraud practiced by the successful party must prove: (1) The judgment or order has been obtained or produced through fraud; (2) it is inequitable or against good conscience to enforce the judgment or order; (3) failure to

secure a just decision is not the result of the vacating party's fault, neglect, or lack of diligence; and (4) the party seeking to vacate has exercised due diligence in discovering the fraud which resulted in the judgment or order in question. See, *County of Lincoln v. Provident Loan & Investment Co.*, 147 Neb. 169, 22 N.W.2d 609 (1946); *Pinches v. Village of Dickens*, 131 Neb. 573, 268 N.W. 645 (1936); *Kielian v. Kent & Burke Co.*, 131 Neb. 308, 268 N.W. 79 (1936).

*Standard of Review.* In reviewing a trial court's action in vacating or refusing to vacate a default judgment, see *Bigler v. Baker*, 40 Neb. 325, 58 N.W. 1026 (1894), or action in setting aside or refusing to set aside a judgment obtained through a trial, see *State v. Cottingham, ante* p. 270, 410 N.W.2d 498 (1987), the Supreme Court will uphold and affirm the trial court's action in the absence of an abuse of discretion. By analogy, a trial court's disposition of a request to vacate a judgment or order allegedly obtained by fraud and entered at a previous term of court should be evaluated by the same standard applicable to requests involving a default judgment or judgment obtained through a trial. Therefore, we hold that under § 25-2001(4), in reviewing a trial court's action in vacating, or refusing to vacate, a judgment or order made in a previous term of court and allegedly obtained through fraud practiced by the successful party, the Supreme Court will uphold and affirm the trial court's action in the absence of an abuse of discretion.

## FRAUD AND COLLUSION

In her third assignment of error, the personal representative contends that the county court erred in determining that the Tax Commissioner had proved fraud to justify vacating the inheritance tax order, as authorized by § 25-2001(4). In the petition to set aside the inheritance tax order, the Nebraska Tax Commissioner alleged that there was actual or intentional fraud and collusion which produced the inheritance tax order and eliminated the potential Nebraska estate tax. The personal representative contends that, to prevail in the action to set aside the inheritance tax order, the Tax Commissioner must present proof suitable to sustain a cause of action for fraud (misrepresentation of a material fact). As we expressed in

*Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 407-08, 390 N.W.2d 487, 491 (1986):

> To recover on a claim for fraud, [a plaintiff] must show (1) that a representation was made; (2) that the representation was false; (3) that, when made, the representation was known to be false, or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that the plaintiff should rely upon it; (5) that the plaintiff reasonably did so rely; and (6) that he or she suffered damage as a result.

The personal representative asks, "What business man wants to expose his books to public scrutiny if he can avoid it?" Brief for Appellant at 25. Later, the personal representative points out that "[t]here are three parties to the Inheritance Tax Determination. They are the county, the State of Nebraska, and the estate," and then asks another rhetorical question: "Did the State rely upon the representations made by the estate's attorney?" Brief for Appellant at 30. The State did not rely on the overstated and misrepresented amount of inheritance tax reflected on the inheritance tax worksheet, but such absence of reliance does not prevent vacating the inheritance tax order.

*Collude* means to "connive with another : conspire, plot." *Collusion* is a "secret agreement : secret cooperation for a fraudulent or deceitful purpose . . . as . . . a secret agreement between two or more persons to defraud a person of his rights often by the forms of law." Webster's Third New International Dictionary, Unabridged 446 (1981). See, also, *Tomiyasu v. Golden*, 81 Nev. 140, 400 P.2d 415 (1965); *Clinton Coop. F. E. Assn. v. Farmers U. G. T. Assn.*, 223 Minn. 253, 26 N.W.2d 117 (1947); *Colegrove v. John Hancock Mut. Life Ins. Co.*, 153 S.W.2d 750 (Mo. App. 1941). As the U.S. Supreme Court stated in *Dickerman v. Northern Trust Company*, 176 U.S. 181, 190, 20 S. Ct. 311, 44 L. Ed. 423 (1900):

> Collusion is defined by Bouvier as "an agreement between two or more persons to defraud a person of his rights by the forms of law, or, to obtain an object forbidden by law," and in similar terms by other legal dictionarians. It implies the existence of fraud of some kind, the employment of fraudulent means, or lawful means for the

accomplishment of an unlawful purpose . . . .

As a general rule, if a judgment has been obtained through fraud and collusion, the judgment may be vacated or set aside in a subsequent action, "especially where the court was imposed upon thereby and the complaining party was prevented from having his interest fairly presented or fully considered by the court." 46 Am. Jur. 2d *Judgments* § 16 at 323 (1969). See, also, *Harjo v. Johnston*, 187 Okla. 561, 104 P.2d 985 (1940); *Abernathy v. Huston*, 166 Okla. 184, 26 P.2d 939 (1933); *Ferguson v. Ferguson*, 98 S.W.2d 847 (Tex. Civ. App. 1936); 49 C.J.S. *Judgments* § 269 (1947). As expressed by the Iowa Supreme Court in *Scheel v. Superior Mfg. Co.*, 249 Iowa 873, 883, 89 N.W.2d 377, 383-84 (1958):

> "It has been said that all deceitful practices in depriving or endeavoring to deprive another of his known rights by means of some artful device or plan contrary to the plain rules of common honesty constitute fraud sufficient to warrant interference with a judgment by a court of equity. It matters little how the fraud is effected; a court looks to the effect, and asks if the result is a consequence of fraud."
>
> . . .
>
>     . . . .
>
> . . . "* * * in the final analysis each case must be judged on its own facts in determining whether the circumstances amount to fraud so as to justify equitable relief against a judgment. Broadly speaking, if the result complained of is a consequence of fraud, the mode or manner in which the fraud was effected is immaterial."

See, also, 46 Am. Jur. 2d, *supra* at § 832.

In the present case, the State seeks to set aside a judgment procured through collusive misrepresentation by its attorney. Setting aside or vacating a judgment may be an appropriate remedy where a judgment was obtained against a litigant by collusion between the attorney for a litigant and the adversary of the litigant. *Mercantile Comm. Bank v. Southwestern, etc., Corp.*, 93 Ind. App. 313, 169 N.E. 91 (1929); *Sturm v. School-District No. 70*, 45 Minn. 88, 47 N.W. 462 (1890). As noted in 46 Am. Jur. 2d, *supra* at § 827 at 984: "[E]quitable relief from a judgment exist[s] where an attorney fraudulently

pretended to represent a party but actually connived at his defeat, or, being regularly employed, corruptly sold out his client's interest."

Sir Walter Scott must have foreseen counsel's conduct in the present case, when he wrote:

Oh, what a tangled web we weave,
When first we practice to deceive!

While both Roubicek and Thomas offered various afterthoughts as methods for arriving at valuations different from, and greater than, the valuations actually used for inheritance tax purposes, the evidence, stripped of all verbal veneer, presents the crystallized fact that the attorneys, through their stipulated inheritance tax worksheet, jointly and deliberately overstated the amount of inheritance tax due Knox County, thereby carrying out their surreptitious agreement to eliminate the potential Nebraska estate tax on the West estate. The inheritance tax of $48,375, reflected on the worksheet, was absolutely impossible on the basis of the valuations reported in that document filed with the county court. Through the deceitful stipulation, each party interested in death tax liability relative to the West estate gained a very real advantage, except the State of Nebraska. For the West devisees, silence was acquired and nondisclosure assured, for, as acknowledged by the personal representative: "The heirs were anxious to avoid producing their books of account, and so on, in a county court inheritance tax hearing." Brief for Appellant at 24. For Knox County, there was the all-too-obvious exaggerated inheritance tax collected by the county. For the State of Nebraska, the attorneys' stipulation produced only injury—loss of the state estate tax. Roubicek and Thomas spawned the inheritance tax worksheet and its collusive misrepresentation, which was an integral and causative element in the production of an inheritance tax determination effectively eliminating payment of a Nebraska estate tax. Although it is true that the State of Nebraska did not rely on any factual misrepresentation by Roubicek and Thomas, it is also equally true that the State of Nebraska, through its attorney's connivance with the attorney for the personal representative, was prevented from having its interests fairly presented in the matter of the inheritance tax,

which ultimately became crucial in determining whether an estate tax was due the State of Nebraska. The inheritance tax worksheet was an intentionally fraudulent device to eliminate the Nebraska estate tax and was an artful scheme condemned by fundamental rules of honesty applicable to a lawyer representing the interests of a client. With respect to the interests of a client, a lawyer is expected to display dedicated protection, not deliberate damage. Consequently, we disagree with the personal representative, who suggests that the absence of the State's reliance on a factual misrepresentation, otherwise required to sustain a cause of action for civil fraud, precludes vacating a judgment which is the product of fraud and collusion by the county attorney, as the attorney for the State of Nebraska under § 77-2018.03. Therefore, we hold that if a party's lawyer colludes in a material and factual misrepresentation which otherwise constitutes intentional fraud or deceit and results in a judgment adverse to the interests of the party represented by such collusive lawyer, relief by vacating such fraudulently obtained judgment is available under § 25-2001(4) to the injured party. In that manner, we not only avoid relegating a party injured through collusion by that party's lawyer to another action outside the proceedings which produced the fraudulent judgment, that is, an action against the collusive lawyer, but we also avert time-consuming and expensive additional litigation to rectify the inequity caused by a lawyer's deceit toward the client.

The evidence presented to the county court supports, if not compels, the finding of fraud and collusion detrimental to the State of Nebraska.

> A judicial abuse of discretion does not denote or imply improper motive, bad faith, or intentional wrong by a judge, but requires the reasons or rulings of a trial judge to be clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition through a judicial system.

*Bump v. Firemens Ins. Co.*, 221 Neb. 678, 689, 380 N.W.2d 268, 276 (1986). Tested by a factual foundation and the plain rules of common honesty, the county court's judgment setting aside the inheritance tax order does not constitute an abuse of

discretion.

## ERROR ASSIGNED BUT NOT ARGUED

In her final assignment of error the personal representative alleges that the county court erred in overruling the personal representative's motion for a mistrial, an error not discussed in the argument portion of the personal representative's brief. Therefore, we decline to consider this assignment of error, because "consideration of assignments of error is limited to those discussed in the brief." *State v. Evans*, 215 Neb. 433, 444, 338 N.W.2d 788, 795 (1983); *Fee v. Fee*, 223 Neb. 128, 388 N.W.2d 122 (1986); Neb. Ct. R. of Prac. 9D(1)d (rev. 1986).

We affirm the district court's judgment, which affirmed the the county court's judgment, vacating and setting aside the inheritance tax order entered in the estate of Loyd West, deceased.

AFFIRMED.