COMMONWEALTH *vs.* WILLIAM G. BUCKLEY.

Suffolk.    May 28, 1968. — June 20, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Narcotic Drugs. Public Welfare Offence. Statute,* Construction. *Constitutional Law,* Due process of law, Freedom of association, Cruel and unusual punishment.

G. L. c. 94, § 213A, as amended through St. 1960, c. 204, § 2, requires scienter as an element of the crime, created by the statute, of being "present where a narcotic drug is illegally kept or deposited"; so construed, the statute does not violate any constitutional rights to due process of law or freedom of association, nor inflict a cruel and unusual punishment. [512–513]

Conviction in a criminal proceeding of knowingly being "present where a narcotic drug . . . [was] illegally kept or deposited" in violation of G. L. c. 94, § 213A, as amended through St. 1960, c. 204, § 2, was warranted by evidence that when police with a search warrant entered an apartment the defendant, one of two occupants thereof, was found seated at a table on which were an envelope and a partly smoked, unlighted cigarette, each containing marijuana. [513]

INDICTMENT found and returned on January 5, 1967.

The case was tried in the Superior Court before *Collins, J.*

The case was submitted on briefs.

*Ronald J. Chisholm & Gerard F. Schaefer* for the defendant.

*Joseph R. Nolan,* Assistant District Attorney, for the Commonwealth.

CUTTER, J.  Buckley was indicted for being present where a narcotic drug was illegally kept and deposited. The de-

fendant moved for dismissal of the indictment "because the charge is unconstitutionally vague and indefinite, and because it inflicts cruel and unusual punishment." This motion and a motion for a directed verdict of not guilty were denied. The case is before us only on exceptions to these denials.

On December 14, 1966, Lawrence MacNamara, a Boston police officer serving in the narcotics division, went with other officers to an apartment at 35 Revere Street with a search warrant. Jimmy Boyer Banks, "occupant and tenant of the premises," opened the door. The other officers "went . . . into the parlor with" Banks. Officer MacNamara went into the kitchen. Buckley was seated at the kitchen table on which was a brown envelope, found later by analysis to contain marijuana, and a partly smoked, unlighted cigarette, also found later to contain marijuana. Buckley was placed under arrest. He stated that he had "arrived . . . a few minutes before the police." Banks and Buckley were the only persons in the apartment.

1. General Laws c. 94, § 213A (as amended through St. 1960, c. 204, § 2), is set out in the margin.[1] Buckley contends that the first provision (following [A] in fn. 1) is unconstitutionally vague.

There has been little discussion of § 213A in our cases. *Commonwealth* v. *Taber,* 350 Mass. 186, was a prosecution under the third provision of § 213A concerning conspiracy (see fn. 1 at [C]). There was no occasion to consider the questions now before us. In *Commonwealth* v. *Murphy,* 342 Mass. 393, an appeal from a conviction of violation of G. L. c. 271, § 17, as amended, there was passing reference (p. 397, fn. 1) to c. 94, § 213A. At pp. 396–397, we said, "Subject

---

[1] Section 213A reads: "Whoever [A] is *present* where a narcotic drug is *illegally kept or deposited,* or [B] whoever is in the company of a person, *knowing* that said person is illegally in possession of a narcotic drug, or [C] whoever conspires with another person to violate the narcotic drugs law, may be arrested without a warrant by an officer . . . whose duty it is to enforce the narcotic drugs law, and may be punished by imprisonment in the state prison for not more than five years, or by imprisonment in a . . . house of correction for not more than two years or by a fine of not less than five hundred dollars nor more than five thousand dollars" (emphasis supplied). The letters in brackets are inserted to assist convenient reference to the language immediately following such letters, respectively.

to possible constitutional limitations as to the operation of a statute . . . the Legislature may determine what shall be deemed a 'public welfare offense' punishable notwithstanding innocent intent. . . . But an intention to create such an offence should appear in *clear and unambiguous* language" (emphasis supplied).

Although § 213A was materially revised by St. 1960, c. 204, § 2, the language of the first clause as it appeared in St. 1957, c. 660, § 1 (p. 568), was not changed.[2]  In 1957, however, § 213A authorized merely the arrest without a warrant of a person "present" where narcotics were.  By the 1960 amendment, such presence was made a criminal offence.

The first clause of § 213A, if read literally, imposes strict criminal liability without regard to whether the accused had knowledge or mens rea.  The provision cannot be construed as merely stating the circumstances which give rise to a prima facie case sufficient to establish guilt.  Compare the statutes discussed in *Commonwealth* v. *Douglas, ante,* 212, 219–220, and cases cited.  We thus first consider whether a literal reading of the section as a "public welfare" statute, imposing strict liability "notwithstanding innocent intent," should be taken as reflecting the legislative purpose.

Statutes, purporting to create criminal offences which may "impinge upon the public's access to constitutionally protected matter" (see *Demetropolos* v. *Commonwealth,* 342 Mass. 658, 661), have been construed to require knowledge by the accused of the facts giving rise to criminality.  Such an interpretation is in part, at least, to preserve interests protected under the First Amendment to the Constitution of the United States.  See *Commonwealth* v. *Corey,* 351 Mass. 331, 332–334.  There is some indication that the due process clause of the Fourteenth Amendment may require knowledge in a range of situations not limited to those which have First

---

[2] The legislative history does not indicate why § 213A was inserted in the 1957 statute which contains many features of the Uniform Narcotics Drugs Act (see G. L. c. 94, §§ 197–217D).  That act contains no comparable provision.  See Uniform Laws Annotated, vol. 9B, pp. 415, 423; 1957 House Bill No. 3072; 1957 Senate Bill No. 767; 1960 House Bills Nos. 2489, 2490.

Amendment aspects. See *Lambert* v. *California,* 355 U. S. 225, 228–230 (failure of a person who had previously been convicted of a felony to register as required by a city ordinance, where such person had no knowledge of the ordinance).[3] Generally, however, it has been held that the Legislature may make criminal an act or omission even where the person responsible has no "blameworthy condition of the mind." See *Commonwealth* v. *Mixer,* 207 Mass. 141, 142–143; *Commonwealth* v. *Ober,* 286 Mass. 25, 30; *Commonwealth* v. *Lee,* 331 Mass. 166, 168; *Commonwealth* v. *Murphy,* 342 Mass. 393, 396; Williams, Criminal Law, The General Part (2d ed.), §§ 75–90, esp. at pp. 234–239, 250–254, 255–265; Perkins, Criminal Law, 692–712; Sayre, Public Welfare Offenses, 33 Col. L. Rev. 55; Hart, Aims of the Criminal Law, 23 Law and Contemporary Problems, 401, 422–425. See also Mr. Justice Jackson's discussion of "public welfare" or "strict liability" offences in *Morissette* v. *United States,* 342 U. S. 246, 250–273. There (at pp. 256–258) it is suggested that these are often offences where punishment is by "penalties commonly . . . relatively small" and where "conviction does no grave damage to an offender's reputation."[4] For other instances of public welfare offences, see *United States* v. *Balint,* 258 U. S. 250, 252–254; *United States* v. *Dotterweich,* 320 U. S. 277, 280–281. Cf. Borre, Public Welfare Offenses: A New Approach, 52 J. Crim. Law 418–422.

Section 213A permits the imposition of a severe penalty, as much as five years in prison. It hardly can be regarded as a minor offence. Thus it would take unusually clear legislative language to lead us to the view that knowledge

---

[3] A later case, involving allegedly obscene materials, contains general language which may not be limited to prosecutions where there is some First Amendment consideration. See *Manual Enterprises, Inc.* v. *Day, Postmaster Gen.* 370 U. S. 478, 492–493. See also *Redrup* v. *New York,* 386 U. S. 767, 771–772 (in Mr. Justice Harlan's dissent).

[4] See Am. Law Inst., Model Penal Code (Tent. Draft No. 4, 1955), §§ 2.05, and comments, pp. 12, 18, 123, 140 (also Proposed Official Draft, 1962, pp. 25–28, 31–32), which avoids the imposition of strict liability except for minor violations and where major penalties are not to be imposed. Cf. discussion in *Warner* v. *Metropolitan Police Commr.* [1968] 2 Weekly L. R. 1303, 1307–1320 (dissent), 1324–1335, 1337–1341, 1343–1348, 1350–1354.

is not required for a conviction under the first clause (fn. 1 at [A]). In view of the *Lambert* case, 355 U. S. 225, any other interpretation would raise serious constitutional doubts. Indeed, in another jurisdiction a closely similar statute has been held invalid. *Seattle* v. *Ross,* 54 Wash. 2d 655, 659–662. See *State* v. *Birdsell,* 235 La. 396, 411–415. To avoid such possible constitutional doubts (see *Commonwealth* v. *Corey,* 351 Mass. 331, 334; see also *Worcester County Natl. Bank* v. *Commissioner of Banks,* 340 Mass. 695, 701; *Opinion of the Justices,* 341 Mass. 760, 785), we interpret the first clause of § 213A as requiring for a conviction proof that the accused was "present where [he knew] a narcotic drug . . . [was] illegally kept or deposited." As in the situation discussed in *Commonwealth* v. *Holiday,* 349 Mass. 126, 128, however, a "person's knowledge . . . like his intent, is a matter of fact, which may not be susceptible of proof by direct evidence. In that event resort must be had, and frequently is had, to proof by inference from all the facts and circumstances developed at the trial." See *Commonwealth* v. *Boris,* 317 Mass. 309, 315 ("resort frequently must be had to proof by inference").

We recognize that the second clause of § 213A (see fn. 1 at [B]) expressly includes the word "knowing," whereas the first clause does not. See *Commonwealth* v. *Raymond,* 97 Mass. 567, 569. In view of the seriousness of the penalty which may be imposed under § 213A, we are unwilling to regard the omission from the first clause (of some word having an effect similar to that of "knowing") as sufficiently indicating the Legislature's "clear and unambiguous" intention to require no proof of knowledge in a prosecution under the first clause. See the *Murphy* case, 342 Mass. 393, 397.

*Commonwealth* v. *Smith,* 166 Mass. 370, 374–375 (presence where gaming instruments are found, that is, in a gaming house; St. 1895, c. 419), and *Commonwealth* v. *Kane,* 173 Mass. 477, 481–482 (presence where instruments for smoking opium were found; St. 1895, c. 194), were mentioned in the *Murphy* case, 342 Mass. 393, 397. Those cases seem to us

to be distinguishable from that before us. In those cases, also, knowledge may have been implied, in part at least, from the character of the particular places involved in those prosecutions.

2. Reading the first clause of § 213A as including a requirement that the accused be present where he knows a narcotic drug is illegally kept or deposited, we think that the words "[w]hoever is present" are not vague. These words, coupled with knowledge, do not import an unlimited area. The words must be given a reasonable interpretation which would permit the knowledge required to be proved. The language reasonably refers to a somewhat restricted space. See *Commonwealth* v. *Kane*, 173 Mass. 477, 481–482.

3. Buckley vaguely argues that (a) the first clause of the statute potentially interferes with the constitutional right of free association, and (b) that it imposes a cruel and unusual punishment. No such violation of constitutional interests can reasonably be found in view of the requirement in the first clause of § 213A, as interpreted by us, that there be proof of knowledge of facts constituting noncompliance with the statute.

4. We are of opinion that there was ample evidence from which the jury could find violation of § 213A as we interpret it. The section is not invalidly vague on its face. There were no exceptions to the judge's charge or to any failure to give requested instructions. The jury reasonably could infer, from Buckley's presence at a table on which were found plainly visible marijuana and a half smoked marijuana cigarette, that he knew about these items.

5. If in the trial court the case was tried on the theory that § 213A imposes strict liability without knowledge, this is ground for a motion for a new trial. G. L. c. 278, § 29, as amended through St. 1966, c. 301.

*Exceptions overruled.*