COMMONWEALTH *vs.* WALTER K. KRAATZ.

Middlesex.    January 15, 1974. — April 30, 1974.

Present: HALE, C.J., ROSE, GRANT, & ARMSTRONG, JJ.

*Motor Vehicle,* Application for driver's license. *"Public Welfare Offense." Statute,* Construction. *Intent. Words,* "False."

The circumstance, that in G. L. c. 90, § 24 (2) (a), as amended through St. 1964, c. 200, § 3, some of the enumerated offenses specifically required scienter as an element, whereas the offense of making false statements in an application for a motor vehicle operator's license did not specifically so require, did not demonstrate a legislative intent that scienter should not be a necessary element of the offense of making such false statements. [198-202]

G. L. c. 90, § 24 (2) (a), as amended through St. 1964, c. 200, § 3, required scienter as an element of the offense, created by that statute, of making false statements in an application for a motor vehicle operator's license; and at the trial of a complaint for such

an offense the judge was in error in ruling that whether the defendant intended to make a false statement in the application was immaterial. [202]

COMPLAINT received and sworn to in the First District Court of Southern Middlesex on October 23, 1967.

On appeal the complaint was tried in the Third District Court of Eastern Middlesex before *Lack*, J.

*Eric Neisser* for the defendant.

*Terence M. Troyer*, Assistant District Attorney (*Bonnie H. MacLeod-Griffin*, Assistant District Attorney, with him) for the Commonwealth.

ARMSTRONG, J.   The defendant was tried and convicted by a jury of six in a District Court upon a complaint charging him with making false statements in an application for a driver's license in violation of G. L. c. 90, § 24 (2) (a), as amended through St. 1964, c. 200, § 3.   The District Court imposed a fine of $200 but stayed its payment pending the disposition of the defendant's exceptions.   His amended bill of exceptions was entered in the Supreme Judicial Court and transferred to this court under G. L. c. 211A, § 12, inserted by St. 1972, c. 740, § 1.

The amended bill states that the defendant's right to operate a motor vehicle in this Commonwealth had been revoked by an order dated April 6, 1964.   Yet, when the defendant applied for a driver's license in 1965, he answered, "No", to the question, "Is your license or right to operate under suspension or revocation anywhere?" At the defendant's trial, the judge excluded a question addressed to the defendant by his attorney as to whether the defendant had intended to make a false statement in the application.   The judge also refused the defendant's request to instruct the jury that intent is a necessary element of the crime.   Rather, he charged the jury that "[t]he intention of the defendant is not material."   The defendant's exceptions bring before us the question whether intent is an essential element of the statutory offense of which he was convicted.

The Commonwealth contends that making false statements in an application for a driver's license is a "public welfare offense" which does not require the defendant's wrongful intent or knowledge as an element of the crime. Although scienter is generally a necessary element of a criminal offense, it is now well settled that it is constitutionally permissible for a legislature to dispense with that element in the creation of certain kinds of offenses. *United States* v. *Balint*, 258 U. S. 250, 251-252 (1922). *Commonwealth* v. *Murphy*, 342 Mass. 393, 396-397 (1961). *Commonwealth* v. *Corey*, 351 Mass. 331, 333 (1966).[1] Our inquiry then is whether the offense of making false statements in an application for a driver's license is, by its statutory language, legislative history, or nature and purpose, such an offense. *Commonwealth* v. *Buckley*, 354 Mass. 508 (1968).

General Laws c. 90, § 24 (2) (a), enumerates a variety of offenses related to motor vehicles, many of which expressly include knowledge as an element.[2] The

---

[1] Indeed, our own Legislature has pioneered in the creation of strict liability offenses designed to safeguard the public welfare. See *Morissette* v. *United States*, 342 U. S. 246, 256 (1952); *Commonwealth* v. *Mixer*, 207 Mass. 141 (1910), and cases cited. The theory of such offenses is that where a danger is posed to the health and safety of the general public that danger justifies placing the burden on the individual to ascertain whether his conduct is encompassed by the statutory prohibition. *United States* v. *Dotterweich*, 320 U. S. 277, 280-281 (1943). The obvious dangers involved in the improper use of motor vehicles have often resulted in regulating their operation by that means. *Commonwealth* v. *Pentz*, 247 Mass. 500, 510-511 (1924). Sayre, Public Welfare Offenses, 33 Col. L. Rev. 55, 72-73 (1933).

[2] As amended through St. 1964, c. 200, § 3, the first sentence of G. L. c. 90, § 24 (2) (a), read in part as follows: "Whoever . . . operates a motor vehicle recklessly, or operates such a vehicle negligently *so that the lives or safety* of the public might be endangered, or upon a bet or wager or in a race, or whoever operates a motor vehicle for the purpose of making a record and thereby violates any provision of section seventeen or any regulation under section eighteen, or whoever without stopping and making known his name, residence and the register number of his motor vehicle goes away after knowingly colliding with or otherwise causing injury to

Commonwealth argues that the juxtaposition of such offenses expressly requiring knowledge (and particularly the offense of knowingly making a false statement in an application for registration of a motor vehicle) with the offense before us, in which knowledge is not expressly made a necessary element, compels the conclusion that the Legislature intended that this be a strict liability offense. A similar argument was explicitly rejected in *Commonwealth* v. *Buckley, supra,* at 512, where the Supreme Judicial Court declined to view the omission of some word such as "knowing" as sufficiently indicating a clear and unambiguous legislative intention to require no proof of knowledge in a prosecution.[3]

---

any other vehicle or property, or whoever uses a motor vehicle without authority knowing that such use is unauthorized, or whoever loans or knowingly permits his license to operate motor vehicles to be used by any person, or whoever makes false statements in an application for such a license or falsely impersonates the person named in such an application or procures such false impersonation whether of himself or of another, or [whoever in an application for registration of a motor vehicle or trailer gives as his name or address or the place where such vehicle is principally garaged a false name, address or place], shall be punished by a fine of not less than twenty nor more than two hundred dollars or by imprisonment for not less than two weeks nor more than two years, or both; and whoever operates a motor vehicle . . . and, without stopping and making known his name, residence and the register number of his motor vehicle, goes away after knowingly colliding with or otherwise causing injury to any person shall be punished by imprisonment for not less than two months nor more than two years."

The words in brackets were struck out by St. 1969, c. 7, and replaced with "whoever *knowingly* makes any false statement in an application for registration of a motor vehicle" (emphasis supplied).

[3] It is true that the severity of the maximum penalty (five years' imprisonment) in the *Buckley* case was instrumental in the court's reasoning. Yet, under the statute before us the defendant could have been fined $200 and sentenced to two years imprisonment, certainly not a trivial penalty. The misdemeanor-felony distinction between this case and the *Buckley* case which is urged by the Commonwealth retains only questionable vitality where both statutes provide for imprisonment for a period longer than six months. See *Duncan* v. *Louisiana,* 391 U. S. 145, 159-162 (1968); *Bloom* v. *Illinois,* 391 U. S. 194, 211 (1968); *Argersinger* v. *Hamlin,* 407 U. S. 25, 29-30 (1972).

The argument based on comparison of form may be made with some force in the case of a statute which appears to have been enacted in the form in which a single draftsman constructed it. The argument loses force when passage through a legislature involves amendments which impinge upon the integrity of that form, or when parts of a statute have been altered many times by successive legislatures.

The history of G. L. c. 90, § 24 (2) (a), shows a patchwork of judicial decisions and legislative engraftments which beclouds any clear perception of legislative intent. In *Commonwealth* v. *Horsfall,* 213 Mass. 232, 236-237 (1913), the defendant's exceptions to his conviction for leaving the scene of an accident without stopping to disclose his identity were sustained because the jury were instructed that the defendant's lack of knowledge of his failure adequately to disclose was immaterial, although such knowledge was a necessary and express element under St. 1909, c. 534, § 22, a predecessor statute of § 24 (2) (a). The Legislature responded to this decision by changing the position of the word "knowingly," thereby restricting the element of knowledge to knowledge that the accident had occurred, and imposing strict liability on one who thinks incorrectly that he has made sufficient disclosure. St. 1916, c. 290. *Commonwealth* v. *Coleman,* 252 Mass. 241, 243-244 (1925). *Commonwealth* v. *Joyce,* 326 Mass. 751, 753-754 (1951). Another clause of this statute was considered in the *Coleman* case, where the Supreme Judicial Court upheld a conviction of using a motor vehicle without authority. Relying on the earlier *Horsfall* episode, the court reasoned that if the Legislature had wished to make intent an element of the offense, it would have inserted a word such as "knowingly." A year later, the Legislature inserted the word "knowingly" in the statutory description of the offense at issue in the *Coleman* case. St. 1926, c. 253. *Commonwealth* v. *Boone,* 356 Mass. 85, 87 (1969). Another clause in this section, which

punished driving to endanger, was consistently construed as imposing liability regardless of innocent intent. *Commonwealth* v. *Pentz,* 247 Mass. 500, 510-511 (1924). *Commonwealth* v. *Vartanian,* 251 Mass. 355, 358 (1925). *Commonwealth* v. *Gurney,* 261 Mass. 309, 312 (1927). The Legislature subsequently altered that clause by inserting a negligence requirement. St. 1928, c. 281, § 1.

By St. 1969, c. 7, the Legislature amended G. L. c. 90, § 24 (2) (a), to make knowledge an express element of the offense of making false statements in an application for registration of a motor vehicle, the offense most closely analogous to the one before us. The original object of the bill (1969 House Doc. No. 1981) on which c. 7 was based was to expand the scope of the prohibition from certain specified false statements to any false statements. The word "knowingly" was not inserted until the third reading of the bill. 1969 House Journal, p. 592. The insertion was based on the report of the House Committee on Bills in the Third Reading, whose consideration is primarily concerned with draftsmanship rather than substantive policy. There is no basis for concluding that "knowingly" was inserted with a view to changing the law. It may well have been intended simply to clarify the legislative intention respecting the single offense then under consideration.

In addition, as neither the original bill nor the resulting statute, St. 1969, c. 7, reproduced the entire text of G. L. c. 90, § 24 (2) (a), there is no basis for thinking that the Legislature ever considered whether the statutory description of the offense of making a false statement in an application for a driver's license should be similarly amended by the insertion of "knowingly." Consequently, we do not think it can be concluded that the Legislature has demonstrated an intent that knowledge not be an element of the latter offense.

Statutes punishing the making of false statements often provide expressly that such false statements must be made

knowingly. See G. L. c. 268, §§ 1, 1A, 6, 6A and 6B. Nevertheless, courts construing statutory provisions dealing with the making of false statements have held that guilty knowledge is implicit in the concept of falsity itself. *Gilpin* v. *Merchants' Nat. Bank,* 165 Fed. 607, 611 (3d Cir. 1908). *Wilensky* v. *Goodyear Tire & Rubber Co.* 67 F. 2d 389, 390 (1st Cir. 1933). The term "false" has generally been interpreted as connoting intentional untruth. *Lanier* v. *State,* 448 P. 2d 587, 592 (Alaska 1968). *McBride* v. *People,* 126 Colo. 277, 282 (1952), and cases cited. *Trumble* v. *Stano,* 35 Ohio Op. 2d 37 (C. P. Cuyahoga County 1965). Cf. *Eliot Nat. Bank* v. *Gill,* 218 Fed. 600, 603-604 (1st Cir. 1914). Black's Law Dictionary (rev. 4th ed.) p. 722, in a passage earlier quoted with approval in several of the cases cited above, comments that "[i]n law ['false'] usually means something more than untrue; it means something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud." Webster's Third New Intl. Dictionary, p. 819, begins its lengthy list of definitions of the word "false" as follows: "la: not corresponding to truth or reality: not true: ERRONEOUS, INCORRECT . . . b: intentionally untrue: LYING . . . 2a: speaking falsehood: not truthful: DISHONEST, DECEITFUL . . . ."

The word "false" is ambiguous. It may import only incorrectness, or it may import intentional incorrectness. On general principles, the ambiguity must be resolved in favor of the defendant. *Commonwealth v. Paccia,* 338 Mass. 4, 6 (1958), and cases cited. We are of the opinion, therefore, that making "false statements" in an application for a driver's license implies scienter and that guilty knowledge is an essential element of the offense.

It follows that the court erred in excluding evidence of the defendant's intention in making the false statement and in instructing the jury that his intention was immaterial.

*Exceptions sustained.*