STATE OF NEBRASKA, APPELLANT, V. JOE MONASTERO, APPELLEE.
STATE OF NEBRASKA, APPELLANT, V. MARLENE "MARDY"
MCCULLOUGH, APPELLEE.
STATE OF NEBRASKA, APPELLANT, V. SAM KATZMAN, APPELLEE.
STATE OF NEBRASKA, APPELLANT, V. WILLIAM M. KATZMAN,
APPELLEE.
STATE OF NEBRASKA, APPELLANT, V. BERNICE LABEDZ, APPELLEE.
424 N.W.2d 837

Filed June 17, 1988.   Nos. 87-387, 87-388, 87-389, 87-390, 87-391.

Robert M. Spire, Attorney General, and William L. Howland, and Ronald L. Staskiewicz, Douglas County Attorney, for appellant.

Thomas J. Guilfoyle of Frost, Meyers, Guilfoyle & Westover, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

In separate informations filed in the district court for Douglas County, the State charged the defendants, Joe Monastero, Marlene "Mardy" McCullough, Sam Katzman, William M. Katzman, and Bernice Labedz, with two counts of falsely swearing to a signature upon an initiative petition, in violation of Neb. Rev. Stat. § 32-713 (Reissue 1984). The charges arose from activity relative to the initiative petition to provide a state lottery. Each defendant filed the identical motion to quash the information, alleging that Neb. Rev. Stat. § 32-705 (Cum. Supp. 1986) and § 32-713, when read jointly, violated both the Nebraska Constitution and the U.S. Constitution. The district court sustained the defendants' motions. Pursuant to Neb. Rev. Stat. § 29-2315.01 (Reissue 1985), the State has taken exception to the district court's rulings and has appealed to this court.

As the result of Neb. Const. art. III, § 2, the people of Nebraska have reserved the power of the initiative for enactment of laws and constitutional amendments through the initiative petition signed by "electors of the state." Neb. Const. art. III, § 4, directs that the constitutional provisions regarding the initiative "shall be self-executing, but legislation may be enacted to facilitate their operation."

Neb. Const. art. VI, § 1, provides: "Every citizen of the United States, who has attained the age of eighteen years, and has resided within the state and the county and voting precinct for the terms provided by law, shall . . . be an elector." Neb.

Const. art. VI, § 2, states: "No person shall be qualified to vote who is non compos mentis, or who has been convicted of treason or felony under the laws of the state or of the United States, unless restored to civil rights."

For an initiative petition, § 32-705 prescribes the contents of the petition circulator's affidavit and the "warning," both required to be written on each page of the petition; specifies qualifications for a petition circulator; and prohibits a "hired and salaried" circulator:

> Every sheet of every petition mentioned in sections 32-702 to 32-704 containing signatures shall have upon it and below the signatures an affidavit in substantially the following form:

STATE OF NEBRASKA )
                              ) ss.
COUNTY OF _____ )

_____, being first duly sworn,
              Name of Circulator

deposes and says that he or she is the circulator of the foregoing petition containing _____ signatures; that he or she is a registered *and* qualified voter of the State of Nebraska and county wherein the signatures were obtained; that each person whose name appears on the petition sheet personally signed the petition in the presence of affiant; . . . that each petitioner when he or she signed this petition was a legal and qualified voter of the state and county and qualified to sign the same, and that affiant stated to each petitioner before he or she affixed his or her signature the legal effect and nature of such petition.

_____
                           Circulator

_____
                           Address

Subscribed and sworn to before me, a notary public, this _____ day of _____, 19___, at _____, Nebraska.

_____
                        Notary Public

Every sheet of every petition mentioned in sections 32-702

to 32-704 containing signatures shall have upon it and above the signatures a statement in substantially the following form:

WARNING: Any person signing any name other than his or her own to any petition, any person knowingly signing his or her name more than once for the same measure at one election, any person who is not, at the time of signing or circulating the same, a registered voter *and* qualified to sign or circulate the same, any person who falsely swears to any signature upon any such petition, any person who accepts money or other things of value for signing the petition, any circulator who offers money or other things of value in exchange for a signature upon any such petition, or any officer or person willfully violating any provision of sections 32-702 to 32-713 shall be guilty of a felony and shall, upon conviction thereof, be punished by a fine not exceeding five hundred dollars, by imprisonment in the Department of Correctional Services adult correctional facility not exceeding two years, or by both such fine and imprisonment. Such statement shall be printed in boldfaced type.

. . . .

Every circulator of a petition shall be of the constitutionally prescribed age or upwards, and a resident and a registered *and* qualified voter of the State of Nebraska and of the county wherein the petitioners reside, except that any person, otherwise qualified, may circulate one or more petitions outside of the county of his or her residence if he or she shall first have filed with the Secretary of State a bond, approved by the Attorney General, in the sum of five hundred dollars, conditioned that in the procuring of signatures to such petition or petitions he or she will conform to all the requirements of sections 32-702 to 32-713. . . . *Any circulator circulating petitions under sections 32-702 to 32-713 shall not be hired and salaried for the express purpose of circulating petitions. A circulator may be paid for his or her expenses incident to circulation of petitions, such as meals, travel, and lodging.* All signatures secured in a manner contrary

to sections 32-702 to 32-713 shall not be counted. Clerical and technical errors in a petition shall be disregarded if the forms herein prescribed are substantially followed.

(Emphasis supplied.)

Among its provisions, § 32-713 specifies a petitioner's qualifications to sign an initiative petition, and sets out the crime of "false swearing" to a signature on an initiative petition:

> *Every person who is a qualified elector of the State of Nebraska may sign an initiative or a referendum petition of any measure upon which he or she is legally entitled to vote; Provided, that no elector shall be qualified to sign or circulate any initiative or referendum petition unless he or she shall be registered as an elector at the time of signing, or unless he or she shall file with the petition an affidavit setting forth the fact that he or she is a qualified elector. . .*
> . The *express purposes* of the provisions of this section are to aid and assist the Secretary of State and the county clerk or election commissioner in determining the validity of signatures, the electoral qualifications of the signers, and sufficiency of the petition, and *to prevent fraud, deception, and misrepresentation in the circulation and signing of a petition. Any person* signing any name other than his or her own to any petition, or knowingly signing his or her name more than once for the same measure at one election, or *who is not, at the time of signing or circulating the same, a legal voter and qualified to sign or circulate the same, or any person who shall falsely swear to any signature upon any such petition*, or any person who accepts money or other things of value for signing any petition, or any circulator who offers money or other things of value in exchange for a signature upon any petition, or any officer or person willfully violating any provision of sections 32-702 to 32-713, *shall be guilty of a Class IV felony.*

(Emphasis supplied.)

After ruling that the defendants had standing to raise the constitutional issues alleged in their motions to quash, the district court found that §§ 32-705 and 32-713, when read

jointly, are unconstitutional, and made specific findings in declaring parts of the subject statutes unconstitutional.

Construing §§ 32-705 and 32-713 together, the district court found that a petitioner's qualifications to sign an initiative petition, as stated in § 32-713, differed from a circulator's qualifications expressed in § 32-705. Under § 32-713, one is qualified to sign an initiative petition if the petitioner-signer is "registered as an elector" (a registered voter) *or* signs an affidavit, accompanying the initiative petition, that the petitioner-signer is a qualified elector (voter). Thus, as provided by § 32-713, one is qualified to sign an initiative petition as a registered voter (elector) or a qualified voter (elector). Unlike the alternative qualification contained in § 32-713 for a petition signer, § 32-705 imposes dual requirements for qualification of a petition circulator. Under § 32-705, a circulator must be a "registered *and* qualified voter." That twofold requirement for a circulator's qualification also appears in § 32-705 concerning the contents of a circulator's affidavit and the mandatory paginal "warning," which states that the circulator must be a registered voter and "qualified" to circulate the petition, that is, a "registered and qualified voter." The district court concluded that the "registered voter" requirement of § 32-705, as an additional qualification to be a circulator of an initiative petition, would discourage circulation of an initiative petition and thereby curtail or discourage a form of political expression protected by the first amendment to the U.S. Constitution.

The district court also found that two parts of the required content for a circulator's affidavit, prescribed by § 32-705, discouraged the initiative process as an expression protected by the first amendment. First, the affidavit required the circulator's averment that the circulator was a "registered and qualified voter" of Nebraska and the county where signatures on the petition were obtained. The additional qualification of voter registration necessary to be a petition circulator, according to the district court, would reduce the number of circulators and would thereby unduly restrict activity for circulation of an initiative petition. Second, the affidavit required the circulator's assertion that each petition signer, at the time of signing, was a legal and qualified voter of Nebraska

as well as the county and was otherwise qualified to sign the petition. A circulator would undoubtedly rely on the signer's statements concerning such qualification. However, if a later development showed that the signer was not a legal and qualified voter and otherwise qualified to sign the initiative petition, the circulator would be confronted by the circulator's sworn declaration to the contrary. The only way the circulator could avoid such possible conflict would be an inspection of voter registration records to verify the qualifications of each signer of an initiative petition. The necessity of such precautionary measure by a circulator would unduly burden and discourage the initiative process.

Next, the district court found that the prohibition against a "hired and salaried" petition circulator was unconstitutional as an infringement of the right to freedom of expression under the first amendment and as a requirement which did not facilitate operation of the initiative process. See Neb. Const. art. III, § 4.

Finally, the district court found that the crime of "false swearing," as set forth in § 32-713, is "unconstitutionally vague and uncertain" for two reasons. First, the subject matter of the sworn falsity is not defined by § 32-713, and "[t]he average citizen would not know what act of his constitutes the crime." Second, § 32-713 does not "require either intent or knowledge to be a material element" of "false swearing."

In its basic elements, the affidavit of § 32-705 requires five sworn declarations by a petition circulator: (1) the number of signatures for the petition; (2) the circulator's status as a registered and qualified voter; (3) presence at the time each petitioner personally signed the initiative petition; (4) the signer's status as one qualified to sign the petition; and (5) each signer was informed by the circulator concerning the legal effect and nature of the initiative petition. Although the district court struck down the affidavit requirements concerning the circulator's and signer's qualificative status, the court made no finding that the three remaining requirements for a circulator's affidavit were unconstitutional. Thus, the requirement that a circulator swear "that each person whose name appears on the petition sheet personally signed the petition in the presence of [the circulator]" remained intact after the court's specific

findings concerning the contents of the circulator's affidavit required by § 32-705.

In examining what "speech" is protected by the first amendment, the U.S. Supreme Court expressed in *Brown v. Hartlage*, 456 U.S. 45, 60, 102 S. Ct. 1523, 71 L. Ed. 2d 732 (1982): "That Amendment embodies our trust in the free exchange of ideas as the means by which the people are to choose between good ideas and bad . . . ." See, also, *Schaumburg v. Citizens for Better Environ.*, 444 U.S. 620, 632, 100 S. Ct. 826, 63 L. Ed. 2d 73 (1980) ("communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes . . . are within the protection of the First Amendment"); *Cohen v. California*, 403 U.S. 15, 24, 91 S. Ct. 1780, 29 L. Ed. 2d 284 (1971) ("constitutional right of free expression"); *Keyishian v. Board of Regents*, 385 U.S. 589, 603, 87 S. Ct. 675, 17 L. Ed. 2d 629 (1967) ("exchange of ideas"); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S. Ct. 766, 86 L. Ed. 1031 (1942) ("exposition of ideas"); *Cantwell v. Connecticut*, 310 U.S. 296, 310, 60 S. Ct. 900, 84 L. Ed. 1213 (1940) ("communication of information or opinion").

Therefore, speech protected by the first amendment to the U.S. Constitution includes the free expression or exchange of ideas, the communication of information or opinions, and the dissemination and propagation of views and ideas, as well as the advocacy of causes.

However, not all speech is protected by the first amendment. The U.S. Supreme Court stated, in *Konigsberg v. State Bar*, 366 U.S. 36, 49, 81 S. Ct. 997, 6 L. Ed. 2d 105 (1961):

At the outset we reject the view that freedom of speech and association . . . as protected by the First and Fourteenth Amendments, are "absolutes," not only in the undoubted sense that where the constitutional protection exists it must prevail, but also in the sense that the scope of that protection must be gathered solely from a literal reading of the First Amendment.

The *Konigsberg* Court noted at 49-50 n.10:

That view [freedom of speech is absolute], which of course cannot be reconciled with the law relating to libel,

slander, misrepresentation, obscenity, perjury, false advertising, solicitation of crime, complicity by encouragement, conspiracy, and the like, is said to be compelled by the fact that the commands of the First Amendment are stated in unqualified terms: "Congress shall make no law . . . abridging the freedom of speech . . . ."

Consequently, as speech, fraud, misrepresentation, and deceit are unprotected by the first amendment.

Validity of a petitioner's signature is an integral part of the initiative, which establishes a direct and participatory democratic process to enact laws in Nebraska. With the requisite number of valid signatures, the proposed law which is the subject of the initiative petition is submitted to a vote of the people. See Neb. Const. art. III, § 2. Without a sufficient number of valid signatures, the initiative petition fails. Validity of signatures on an initiative petition might be established by a requirement that each petitioner sign the petition before one authorized to administer an oath. The impractical logistics of such requirement becomes apparent. To comply with the requirement of a signer's individual oath, each initiative petition would have to be accompanied by one authorized to administer an oath to the petition-signer, or the circulator and the signer would have to present themselves personally before the oath-giver for the purpose of the petitioner's signature on the initiative petition. A feasible alternative or substitute to a signer's individual oath is the oath of a circulator as one with personal knowledge that a petitioner has, in fact, signed the initiative petition, thus providing at least prima facie validity for signatures on an initiative petition. Without signature validation, even if only prima facie, the initiative process might be invoked and placed in motion without any semblance of compliance with the constitutional provisions governing the initiative. Essentially, then, fraud in invoking the initiative process is fraud perpetrated on Nebraska's Secretary of State and other public officials, who must determine the validity of the signatures on a petition, and ultimately on the people of Nebraska. To deter such fraud, criminal sanctions are applicable through § 32-713. Cf. *Spence v. Terry*, 215 Neb. 810,

340 N.W.2d 884 (1983) (Neb. Rev. Stat. § 23-2010 (Cum. Supp. 1982), providing for recall of a public official, required a minimum number of signatures on the original recall petition before an election commissioner's verification of signatures is required or a supplementary petition is permissible).

With the foregoing background on freedom of speech and the importance of valid signatures in the initiative process, we address the constitutionality of § 32-713, somewhat the reverse of the sequence utilized by the district court, which considered the alleged "overbreadth" of § 32-705 before reaching any question about "false swearing" as a crime under § 32-713.

The State contends that the defendants have no standing to attack the constitutionality of § 32-713, since they are charged with fraudulent conduct, "false swearing," prohibited by § 32-713. The State relies upon certain language in *Kay v. United States*, 303 U.S. 1, 6, 58 S. Ct. 468, 82 L. Ed. 607 (1938): "When one undertakes to cheat the Government or to mislead its officers, or those acting under its authority, by false statements, he has no standing to assert that the operations of the Government in which the effort to cheat or mislead is made are without constitutional sanction." Hence, the State concludes: "The defendants have been charged with a fraudulent type of conduct, and by reason thereof, their claim that [§ 32-713 is] unconstitutional is inappropriate." Brief for Appellant at 6. In substance, the State's premise for the defendants' lack of standing is: A defendant, having undertaken to defraud the government, has no standing to attack the penal statute under which the defendant is later charged with perpetration of that fraud. In this appeal, the State's premise ravages the presumption of innocence as a part of due process and creates a curious constitutional conundrum. We point out that we are examining judicial action taken on the defendants' motions to quash the informations charging them. We have no record reflecting that the defendants have, in fact, undertaken to perpetrate any fraud in violation of § 32-713. Next, if a defendant is charged with violation of a fraud statute, but there is a problem with clarity in the definition of fraud in the charging statute, how can a defendant, denied standing as the result of the very nature of the charge, question the meaning

of the statute under which the defendant is charged?

Nevertheless, in an effort to defeat standing by the defendants in the present case, the State relies on *Kay v. United States, supra*, in which the petitioner was convicted of violating § 8(a) and (e) of the Home Owners' Loan Act of 1933, antifraud provisions contained in the act. Under the antifraud provisions of the act, the government charged Kay with making false statements to the Home Owners' Loan Corporation, which was created by the act. Kay challenged the "whole scheme" of the Home Owners' Loan Act, maintaining that Congress lacked constitutional authority to create the Home Owners' Loan Corporation to which Kay had made the false statements. Dismissing Kay's challenge to the constitutionality of all provisions of the Home Owners' Loan Act except § 8(a) and (e) as antifraud provisions, the Court stated:

> There is no occasion to consider this broad question as petitioner is not entitled to raise it. When one undertakes to cheat the Government or to mislead its officers, or those acting under its authority, by false statements, he has no standing to assert that the operations of the Government in which the effort to cheat or mislead is made are without constitutional sanction.

303 U.S. at 6.

In *Kay*, the Court emphasized that "[a]part from any question of the validity of the other provisions of the Home Owners' Loan Act, Congress was entitled to secure protection against false and misleading representations while the Act was being administered, and the separability provision of the Act . . . is clearly applicable." 303 U.S. at 7. Reviewing the separate antifraud provisions of the Home Owners' Loan Act, the Court considered Kay's due process (vagueness) challenge to § 8(a) and concluded: "The statute [§ 8(a)] defining the crime is sufficiently explicit." 303 U.S. at 7. Concerning Kay's constitutional attack (vagueness) on § 8(e) of the act, the Court held: "We think that the statute sets up an ascertainable standard and is 'sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties.' " (Citing and quoting from *United States v. Hill*, 90 F.2d 573 (1937).) 303 U.S. at 9. Therefore, the Court

acknowledged Kay's standing to assert a constitutional challenge (vagueness) to § 8(a) and (e) of the Home Owners' Loan Act, which the Court considered apart from the other provisions of the act.

Also, in maintaining that the defendants lack standing to raise a constitutional challenge to § 32-713, the State relies on *Dennis v. United States*, 384 U.S. 855, 86 S. Ct. 1840, 16 L. Ed. 2d 973 (1966). In *Dennis*, the government charged petitioners with criminal conspiracy in fraudulently obtaining the services of the National Labor Relations Board (NLRB) for a union. The government alleged that petitioners filed false affidavits to satisfy § 9(h) of the National Labor Relations Act (NLRA), which stated that labor unions could not obtain NLRB investigation of employee representation unless each officer of the union and its parent organization filed "non-Communist" affidavits with the NLRB. Four of the six petitioners, representing that they had resigned from the Communist Party, filed non-Communist affidavits with the NLRB. As a result of the fraudulent filings, the union obtained the use of NLRB services. When they were convicted of criminal conspiracy, the petitioners argued that their convictions should be overturned in view of the unconstitutionality of § 9(h) of the NLRA, requiring the non-Communist affidavit.

The U.S. Supreme Court, in *Dennis*, refused to consider the petitioners' claim that the affidavit requirement in § 9(h) of the NLRA was unconstitutional, and declared:

> We need not reach this question, for petitioners are in no position to attack the constitutionality of § 9 (h). They were indicted for an alleged conspiracy, cynical and fraudulent, to circumvent the statute. Whatever might be the result where the constitutionality of a statute is challenged by those who of necessity violate its provisions and seek relief in the courts is not relevant here. This is not such a case. The indictment here alleges an effort to circumvent the law and not to challenge it—a purported compliance with the statute designed to avoid the courts, not to invoke their jurisdiction.

384 U.S. at 865.

The *Dennis* Court, relying on some of its prior decisions,

declined to consider the constitutionality of § 9(h) of the NLRA, since the petitioners, by use of fraudulent and deceitful means, attempted to "circumvent the law which they now seek to challenge." 384 U.S. at 866. The Court also rejected petitioners' attempt to distinguish the Court's prior decisions and show that petitioners' constitutional challenge went to the claimed core of the conviction, namely, petitioners' Communist Party membership and affiliation, which the petitioners falsely represented. The *Dennis* Court then stated:

> We regard this distinction as without force. The governing principle is that a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit. One who elects such a course as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional. *This is a prosecution directed at petitioners' fraud. It is not an action to enforce the statute claimed to be unconstitutional.*

(Emphasis supplied.) 384 U.S. at 867.

In *Dennis*, the government charged petitioners under a general criminal conspiracy statute—a conspiracy involving false affidavits as an attempt to circumvent the affidavit requirement of § 9(h) in the NLRA. To avoid conviction, the petitioners attempted a collateral attack on the constitutionality of the NLRA, which they were seeking to circumvent by their conspiracy. However, the government never applied the provisions of the NLRA to the petitioners' conduct, nor did a violation of the affidavit requirement in the NLRA constitute a crime. Hence, the *Dennis* Court, at 384 U.S. at 867, qualified its application of the "fraud and deceit" standing doctrine in recognizing that the prosecution was "not an action to enforce the statute claimed to be unconstitutional."

Consequently, *Kay v. United States*, 303 U.S. 1, 58 S. Ct. 468, 82 L. Ed. 607 (1938), and *Dennis v. United States*, 384 U.S. 855, 86 S. Ct. 1840, 16 L. Ed. 2d 973 (1966), are cases representing the Supreme Court's development of a standing doctrine, as part of federal law, which precludes a defendant's constitutional challenge to a particular statute, or statutory

scheme, when the defendant has fraudulently circumvented or avoided that particular statute and later, during prosecution for violation of a separate criminal statute prohibiting defendant's conduct, seeks to raise a constitutional question concerning the statute which the defendant had fraudulently circumvented or avoided.

The *Dennis* standing doctrine was reaffirmed in *Bryson v. United States*, 396 U.S. 64, 90 S. Ct. 355, 24 L. Ed. 2d 264 (1969), in which the Court confronted a substantially similar factual situation to that presented in *Dennis*. Bryson was convicted under 18 U.S.C. § 1001 (1982), a general criminal statute prohibiting fraudulent statements to the government. Bryson's fraudulent statement was his denial of affiliation with the Communist Party. More than 10 years after his conviction, Bryson, in a collateral proceeding, claimed that his conviction should be set aside as the result of various constitutional deficiencies in the National Labor Relations Act. Rejecting Bryson's claim, the Court stated: "We find the principle of *Dennis* no less applicable in the case before us. . . . [N]one of the elements of proof necessary for petitioner's conviction under § 1001 has been shown to depend on the validity of [the NLRA]." 396 U.S. at 68-69. However, the Court continued, in *Bryson*: "*Dennis* can hardly be read as instructing courts to impose an extra punishment on a defendant found to have been dishonest by refusing to consider a constitutional argument that is legally relevant to his defense." 396 U.S. at 73.

In view of *Bryson*, the *Dennis* standing doctrine may be applied to prevent a defendant's challenge to the constitutionality of a statute which is collateral and, therefore, irrelevant to the pending prosecution of the defendant. See, also, *United States v. Knox*, 396 U.S. 77, 90 S. Ct. 363, 24 L. Ed. 2d 275 (1969).

This court adopted and applied the rationale underlying the *Dennis* standing doctrine in *State ex rel. NSBA v. Douglas*, 227 Neb. 1, 416 N.W.2d 515 (1987), in which Douglas, a lawyer charged with violating the Code of Professional Responsibility, challenged the constitutionality of the Nebraska Political Accountability and Disclosure Act, Neb. Rev. Stat. §§ 49-1401 et seq. (Reissue 1984). Douglas failed to comply with the

reporting or disclosure requirements of that act. One specification of misconduct was based on Douglas' failure to report as required by the act. Douglas argued that the act was unconstitutional and, therefore, his conduct should be evaluated without any reference to the alleged violation of unconstitutional legislation.

In *Douglas*, this court rejected Douglas' constitutional challenge to the disclosure act and, noting at 34, 416 N.W.2d at 535, that "[t]he matter before us is not confined to the question [of] whether respondent has violated the act, but the matter of respondent's conduct," relied on *Dennis v. United States, supra,* for the conclusion that "[t]he issue of the constitutionality or unconstitutionality of the Nebraska Political Accountability and Disclosure Act is irrelevant" to the disciplinary issues placed before the court. 227 Neb. at 35, 416 N.W.2d at 535. The *Douglas* court concluded that Douglas did not have standing to assert his particular constitutional challenge and emphasized that

> [i]n *Dennis*, the prosecution was for the petitioners' fraud. It was not an action to enforce the statute claimed to be unconstitutional. The same is true with the case at bar. *It is a case directed at the respondent's actions, not a case to enforce the statute claimed to be unconstitutional.*

(Emphasis supplied.) 227 Neb. at 36, 416 N.W.2d at 536.

In the present case, the State ignores the U.S. Supreme Court's admonition in *Bryson*, namely, that "*Dennis* can hardly be read as instructing courts to impose an extra punishment on a defendant found to have been dishonest by refusing to consider a constitutional argument that is legally relevant to his defense." 396 U.S. at 73. Regarding the present appeals, the State has charged the defendants with falsely swearing to a signature on an initiative petition, a violation of § 32-713. However, defendants assert a direct constitutional challenge to § 32-713 and the crime of "false swearing" described in that statute. Unlike the situation in *Dennis v. United States*, 384 U.S. 855, 86 S. Ct. 1840, 16 L. Ed. 2d 973 (1966), but similar to *Kay v. United States*, 303 U.S. 1, 58 S. Ct. 468, 82 L. Ed. 607 (1938), this court is confronted with a direct due process (vagueness) challenge to the constitutionality of § 32-713, the

statute which is the basis for the prosecution of the defendants. Thus, in contradistinction to *Dennis*, the State prosecutes to enforce the statute challenged by the defendants as unconstitutional. Consequently, we conclude that application of *Dennis* is limited to situations in which a defendant attempts to circumvent or avoid conviction under a particular statute by asserting a constitutional challenge to another and collateral statute which is irrelevant to the prosecution. Cf. *Douglas, supra*. Therefore, the defendants in the present case have standing for a "vagueness" challenge to the constitutionality of § 32-713.

The vice of vagueness in a penal statute was denounced in *Kolender v. Lawson*, 461 U.S. 352, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983), by the U.S. Supreme Court's statement:

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. [Citations omitted.] Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." [Citation omitted.] Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." [Citation omitted.]

461 U.S. at 357-58. See, also, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972).

Thus, due process requires that a penal statute supply adequate and fair notice of the conduct prohibited and also supply an explicit legislative standard defining the proscribed conduct, to prevent arbitrary and discriminatory enforcement at the discretion of law enforcement officials. See, *Kolender v.*

*Lawson, supra; State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987); *State v. Sailors*, 217 Neb. 693, 352 N.W.2d 860 (1984); L. Tribe, American Constitutional Law § 12-31 (2d ed. 1988).

Therefore, we must examine the "false swearing" prohibition of § 32-713 to determine whether that penal statute affords constitutionally required due process.

In substance and according to its legislatively expressed purpose, § 32-713 contains antifraud provisions, that is, statutory prohibition and protection against certain types of fraud, deception, and misrepresentation in the circulating and signing of an initiative petition. Specifically, § 32-713 prohibits a circulator's falsely swearing that every person whose name appears as an initiative petitioner personally signed that petition in the circulator's presence. Such prohibited conduct by a petition's circulator is defined by combining the language of § 32-713, "falsely swear to any signature upon any [initiative] petition," and the language of § 32-705 concerning the circulator's affidavit, namely, that the circulator must declare by affidavit "that each person whose name appears on the petition sheet personally signed the petition in the presence of [the circulator]." " 'The prohibition against vagueness does not invalidate a statute simply because it could have been drafted with greater precision. The test is whether the defendant could reasonably understand that his conduct was proscribed by the statute.' " *State v. Sailors, supra* at 695, 352 N.W.2d at 862.

By reading §§ 32-713 and 32-705 together, a petition circulator has adequate and fair notice of the subject matter of the falsity regarding a petitioner's signature placed on an initiative petition or the conduct condemned and prohibited at the peril of punishment.

In *State v. Copple, supra*, we encountered a defendant's question concerning the due process sufficiency of Neb. Rev. Stat. § 28-511(1) (Reissue 1985) in defining the crime of "theft," namely: "A person is guilty of theft if he or she takes, or exercises control over, movable property of another with the intent to deprive him or her thereof." Copple contended the statute was vague because the word *unlawfully* is not contained in the body of § 28-511(1). Referring to other definitional statutes or sections in the Nebraska Criminal Code pertaining

to "theft," we held that § 28-511(1) is not vague, and stated at 685, 401 N.W.2d at 152:

> Apparently Copple views the Nebraska Criminal Code as absolutely unrelated statutes which, by design or chance, have been collected in chapter 28 of the Revised Statutes of Nebraska. However, the Nebraska Criminal Code is a systematic statutory statement, defining criminal offenses and prescribing penalties for commission of crimes. All facets of a criminal offense need not be embodied in one statute and that statute alone. Characteristic elements of some, but not all, criminal offenses are specified in a statute within the Nebraska Criminal Code, while another statute within the code may specify a meaning assigned to certain elements of a particular crime, and still other statutes prescribe penalties which may be imposed on conviction of a criminal offense. The result is a statutory synergism, supplying information to the ordinary person about conduct condemned as criminal and punishable in a prescribed form. The statutes contained in the Nebraska Criminal Code no more exist in individual isolation than do the people governed by that code. To an ordinary person, § 28-511(1) supplies fair notice concerning conduct which is condemned as criminal and, therefore, prohibited by the Nebraska Criminal Code.

Similar to *Copple*, "false swearing," prohibited by § 32-713, contains sufficient due process definition concerning the subject matter of the falsity condemned by that statute.

As described in § 32-713, "false swearing" is not unconstitutionally vague as the result of the absence of "knowledge" or "intent" expressed as elements for the crime of "false swearing."

Courts have generally determined that the word *false* or *falsely* means "intentionally untrue" or deceitful, implying an intention to perpetrate a fraud. See, *Nimmo v. State*, 603 P.2d 386 (Wyo. 1979); *State v. Tedesco*, 175 Conn. 279, 397 A.2d 1352 (1978) (*false* implies something more than mere untruth, and imports knowledge and a specific intent to deceive); *Commonwealth v. Kraatz*, 2 Mass. App. 196, 310 N.E.2d 368 (1974) (*false* in a statute prohibiting false statements in an

application for a driver's license required guilty knowledge as an essential element of the offense); *Laughlin v. Bon Air Hotel Incorporated*, 85 Ga. App. 43, 46, 68 S.E.2d 186, 189 (1951) ("falsely swearing" is "knowingly affirming"); *United States v. Achtner*, 144 F.2d 49 (2d Cir. 1944) (*falsely*, as used in a criminal statute, means something more than an untruth and includes the intent to defraud); *City of Boston v. Santosuosso*, 307 Mass. 302, 30 N.E.2d 278 (1940) (*falsely* means willfully untrue, showing consciousness of guilt).

In *Nimmo v. State, supra*, Nimmo claimed that Wyoming's "false swearing" statute was constitutionally deficient for due process because the statute did not require intent or knowledge as an element of criminal "false swearing." In determining that the statute provided due process and adequate notice concerning the act prohibited, the Supreme Court of Wyoming concluded that the word *false* supplies the element of criminal intent, and stated:

> This court could merely rely upon the word "false" in upholding the constitutionality of the statute. *Black's Law Dictionary*, pp. 721-722 (Rev. 4th Ed., 1968), demonstrates that when the word is used in varying situations it is given different definitions. However, the word is defined in *Black's Law Dictionary, supra*, in this manner: "In law, this word usually means something more than untrue; it means something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud. . . ." This definition has been adopted in *Lanier v. State*, Alaska, 448 P.2d 587, 593 (1968); and *Wilensky v. Goodyear Tire & Rubber Co.*, 1st Cir., 67 F.2d 389, 390 (1933). *Commonwealth v. Kraatz*, 2 Mass.App. 196, 310 N.E.2d 368, 372 (1974), not only adopts this definition, but makes the following observation: ". . . The term 'false' has generally been interpreted as connoting intentional untruth. [Citing authorities.] . . ."

603 P.2d at 390.

Thus, we conclude and hold that *falsely*, as used in § 32-713, means deliberately or intentionally and refers to an act, "to swear," done with the actor's knowledge. *Falsely*, as used in § 32-713, specifies the element of deliberate or intentional

untruth or deceit regarding a circulator's swearing to a petitioner's signature on an initiative petition, that is, the circulator's false swearing must be an intentional or deliberate act.

Section 32-713, defining the crime of "false swearing" in reference to an initiative petition, is not unconstitutional for vagueness. The district court's finding that § 32-713 is vague and, therefore, unconstitutional is incorrect and must be set aside.

We recall that some speech, such as fraud, deception, and misrepresentation, is unprotected by the first amendment. The defendants have contended, and the district court ruled, that "freedom of speech" protected by the first amendment was effectively prohibited by certain provisions in § 32-705, namely, the enhanced requirement for qualification as a petition circulator, the contents of a circulator's affidavit concerning the circulator's and signer's qualification with respect to the circulated petition, and the prohibition against a "hired and salaried" circulator of an initiative petition. The defendants have questioned those parts of § 32-705, although the particular crime charged against the defendants, "false swearing" prohibited by § 32-713, does not contain any element consisting of the specific provisions of § 32-705 found constitutionally objectionable by the district court.

> For standing to contest constitutionality of a statute, the contestant must be one who is, or is about to be, adversely affected by the statute in question and must show that, as a consequence of the statute's alleged unconstitutionality, the contestant is deprived of a constitutionally protected right. . . .
>
> . . . .
>
> Courts will not decide a question concerning the constitutionality of a statute unless such question has been raised by a litigant whose interests are adversely affected by the questioned statute. A court has no power to summarily pass upon the constitutionality of a legislative act, but has power only to decide justiciable disputes. A court's power to declare a statute unconstitutional may be invoked only when the challenged statute affects a

> litigant's right under the Constitution. [Citations omitted.]

*In re Estate of West*, 226 Neb. 813, 829-30, 415 N.W.2d 769, 780-81 (1987).

" 'The province of a court is to decide real controversies and to determine rights actually controverted, and "[t]he judicial power does not extend to the determination of abstract questions." ' " *Mullendore v. School Dist. No. 1*, 223 Neb. 28, 36, 388 N.W.2d 93, 99 (1986) (citing and quoting from *Fremont Cake & Meal Co. v. Wilson & Co.*, 183 F.2d 57 (8th Cir. 1950)).

We are mindful of the U.S. Supreme Court's recognition of third-party standing in certain cases, as expressed in *Schaumburg v. Citizens for Better Environ.*, 446 U.S. 620, 634, 100 S. Ct. 826, 63 L. Ed. 2d 73 (1980):

> Given a case or controversy, a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court. [Citations omitted.] In these First Amendment contexts, the courts are inclined to disregard the normal rule against permitting one whose conduct may validly be prohibited to challenge the proscription as it applies to others because of the possibility that protected speech or associative activities may be inhibited by the overly broad reach of the statute.

Under § 32-713, "false swearing" pertains only to a circulator's deceitful or false declaration that the circulator was present when a petitioner signed his or her name on the initiative petition. As an antifraud provision, § 32-713 aims at the noncommunicative impact of the defendants' conduct and seeks to regulate or eliminate a particular harm not caused by an expression or exchange of ideas, information, or other speech protected by the first amendment. See L. Tribe, American Constitutional Law § 12-2 (2d ed. 1988). The falsity condemned by § 32-713 and charged against the defendants nowise involves or relates to a person's qualification for circulating or signing an initiative petition under § 32-705. The State has not charged these defendants with prohibited payment to a circulator. Simply stated, there is no reasonable

and legal connection between the crime charged against the defendants and the challenged provisions of § 32-705. To have third-party standing to assert that a statute is overbroad and prohibits or impermissibly restricts freedom of speech, a defendant's conduct, as "speech," must be within the purview of the statute claimed to be overbroad. No such nexus exists between the defendants' conduct charged in the present case and the provisions of § 32-705, which were found to be unconstitutional as a violation of the first amendment. Notwithstanding and irrespective of any questioned constitutionality of the specific parts of § 32-705, considered and determined by the district court, prosecution of the defendants would be unaffected and is maintainable under § 32-713 for "false swearing."

The doctrine of third-party standing in first amendment cases, nevertheless, requires that a court must be "[g]iven a case or controversy," see *Schaumburg, supra* at 634, before third-party standing exists. Deciding whether a statute is unconstitutional, when a party's conduct is not even related to or implicated in the questioned statute, becomes a question about the hypothetical or abstract and might be characterized as a purely advisory opinion without resolution of any real controversy between litigants.

> Whether an unconstitutional provision is severable from the remainder of the statute in which it appears is largely a question of legislative intent, but the presumption is in favor of severability. "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law."

*Regan v. Time, Inc.*, 468 U.S. 641, 653, 104 S. Ct. 3262, 82 L. Ed. 2d 487 (1984).

This court has adopted a four-part test for severability of provisions found to be unconstitutional in an act:

> (1) Whether, when absent the invalid portions, a workable plan remains. . . . (2) Whether the valid portions of an act can be enforced independently, and where the invalid portions do not constitute such an inducement to the valid

parts that the valid parts would not have passed without the invalid parts. . . . (3) Whether the severance would do violence to the intent of the Legislature. . . . [And] (4) Whether a declaration of separability is included in the act, indicating that the Legislature would have enacted the bill absent the invalid portion.

*State ex rel. Douglas v. Sporhase,* 213 Neb. 484, 486, 329 N.W.2d 855, 856-57 (1983).

Assuming existence of the defendants' third-party standing, the provisions of § 32-705 found unconstitutional by the district court are clearly severable from the remaining provisions of that statute. The provisions of § 32-705 concerning the contents of a circulator's affidavit, which were not found unconstitutional, would still afford a plausible affidavit as a part of the procedure for circulating and signing an initiative petition. Even without the parts of § 32-705 found to be unconstitutional by the district court, a crime still has been charged against the defendants under a constitutional penal statute, § 32-713, which prohibits "false swearing."

Because the provisions of § 32-705 were not the basis of the prosecution against the defendants in the present cases for "false swearing," see § 32-713, the defendants have failed to show that they are, or may be, adversely affected by the provisions of § 32-705 and, hence, have failed to demonstrate that § 32-705 will deprive the defendants of a constitutionally protected right as the result of the pending prosecution. In view of the particular charge against the defendants, "false swearing" prohibited by § 32-713, the district court's ruling concerning § 32-705 was unnecessary for disposition of the defendants' constitutional challenge to § 32-713 as vague. Inasmuch as the defendants did not have third-party standing to challenge the constitutionality of § 32-705, the district court's ruling concerning that statute must be set aside. Also, the defendants lack standing to challenge § 32-705 as an alleged violation of Neb. Const. art. III, § 4, which directs that the constitutional provisions regarding the initiative "shall be self-executing, but legislation may be enacted to facilitate their operation." See, *In re Estate of West,* 226 Neb. 813, 415 N.W.2d 769 (1987); *Mullendore v. School Dist. No. 1,* 223 Neb. 28, 388

N.W.2d 93 (1986).

Consequently, we conclude that the district court erred by considering the defendants' constitutional challenges to the various provisions of § 32-705. However, we express no opinion concerning the constitutionality of any provision in § 32-705, inasmuch as the appeals now before us present no case and controversy regarding § 32-705, but see, *State v. Radcliffe, post* p. 868, 424 N.W.2d 608 (1988), which this court has issued today, and *Meyer v. Grant,* 56 U.S.L.W. 4516 (U.S. June 6, 1988) (No. 87-920), both of which contain the constitutional conclusion that a statutory prohibition against the use of paid circulators for an initiative petition abridges the initiative proponent's right of free speech in political expression protected by the 1st and 14th amendments to the U.S. Constitution.

Therefore, we sustain the State's exceptions to the district court's judgment, vacate the findings and judgment of the district court, and remand this matter to the district court for further proceedings.

EXCEPTIONS SUSTAINED, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.

HASTINGS, C.J., and BOSLAUGH, J., concur in the result.